675 P.2d 1301

**STATE of Arizona, Appellee,**

v.

**Ray GIRDLER, Jr., Appellant.**

No. 5621.

Supreme Court of Arizona,
In Banc.

Dec. 21, 1983.

Rehearing Denied Jan. 24, 1984.

Robert K. Corbin, Atty. Gen. by William J. Schafer III and Georgia B. Ellexson, Asst. Attys. Gen., Phoenix, for appellee.

H.K. Wilhelmsen, Prescott, for appellant.

Ray Girdler, Jr., in pro. per.

CAMERON, Justice.

Defendant, Ray Girdler, Jr., appeals from convictions of arson of an occupied structure, A.R.S. § 13–1704, and two counts of felony murder, A.R.S. § 13–1105. The defendant received two life sentences for the two first-degree murders and twenty-one years for arson, all sentences to be served consecutively. This court has jurisdiction pursuant to A.R.S. § 13–4031 and Arizona Constitution, Article 6, § 5.

The defendant's counsel raised the following questions on appeal:

1. Did the warrantless search of the burned structure violate the Fourth Amendment?

2. Was it error to admit photographs of the decedents at trial?

3. Was the jury instruction on circumstantial evidence erroneous?

4. Was the evidence sufficient to support the verdict?

5. Do consecutive sentences violate the Double Jeopardy Clause of the United States Constitution?

Defendant, in his separate brief, raised two additional questions:

6. Was it error to admit testimony regarding the defendant's deceased dog?

7. Did the court err in denying a motion for change of venue?

The facts necessary for a determination of this appeal are as follows. The defendant lived with his wife and two-year-old daughter in a mobile home just outside Prescott. They had been experiencing financial problems for several months. The defendant testified that on the night of 19 November 1981 his wife had gone to bed at about midnight. He stayed up and painted bicycles in the living room of their 10′ × 55′ mobile home until about 2:15 A.M. He claimed he was awakened about 2:45 A.M. by the screams of a cat. He noticed smoke and a fire, and went outside to his car to get a fire extinguisher. He had trouble getting the extinguisher from the car, and by the time he returned to the door of the mobile home, heat and smoke prevented him from reentering. After calling for his wife with no response, he called his neighbor and asked him to call the fire department. The call was received by the Central Yavapai Fire Department at approximately 2:59 A.M. The first group of firemen arrived at 3:08 A.M. Just as the firemen arrived, the defendant went to his neighbor's house and remained there until after the fire was extinguished. The bodies of his wife and child were found together in the child's room.

The defendant was interviewed in his neighbor's home shortly thereafter. There were inconsistencies between the statements made by the defendant during the investigation and at trial concerning exactly when he went to bed, when he woke up, whether his wife was awake, and exactly when he first saw flames in the living room. There was also conflicting testimony as to how the death of his wife and child affected the defendant.

The defendant contended that cats playing on the stove might have started the fire. Several experts testified that arson using liquid accelerants could be the only cause of the fire consistent with the facts as disclosed in the ensuing investigation. The county coroner testified as to the condition of the bodies and the cause of death. An inmate who had been in the Yavapai County Jail with the defendant testified that the defendant had commented, "I shouldn't have killed my baby" under his breath during a religious discussion. Oth-

er witnesses' testimony indicated the defendant had loved his wife and child and was deeply hurt by their death. The jury returned a verdict of guilty on two counts of felony murder and one of arson. The defendant was sentenced to consecutive terms of twenty-one years for arson, life imprisonment without possibility of parole for twenty-five years for the felony murder of his wife, and an identical life sentence for the murder of his child. Defendant appeals the convictions, judgments, and sentences.

## WARRANTLESS SEARCH OF THE BURNED MOBILE HOME

After the fire had been extinguished, Ron Prince, the deputy fire marshal on the scene, took a few photos and had the area roped off and secured. It was still early in the morning (4 A.M.), and he did not think an investigation would be appropriate at that time, even though he had already found multiple points of ignition and thought the fire was arson. Later that day, the state fire investigators went to the home of the defendant's mother to obtain consent for a further search of the mobile home. The defendant was not there, and it was not known how long he would be gone. The defendant's mother stated she was a joint tenant of the property and could give the necessary consent. The officers explained the consent form and she signed it. Pursuant to that consent, the mobile home was searched the afternoon of the fire. Two later searches were conducted pursuant to a warrant based in part on the results of this warrantless search.

The defendant claims the consent was not valid and therefore the searches were unconstitutional, and the evidence seized should have been suppressed. He contends that his mother's only incidents of ownership in the mobile home were that she was listed as a joint owner and was evidently listed on the insurance policy covering the mobile home. He asserts she had no control over the premises, did not have a key and had only visited a few times, and therefore could not give a valid consent to search. The defendant also claims that the later searches pursuant to warrant were improper because the warrant was based, in part, on evidence obtained during the allegedly invalid consent search, and was therefore the "fruit of the poisonous tree" under *Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). We do not agree.

The search of the home immediately after the fire was permissible. The United States Supreme Court has held that fire officials

> need no warrant to remain in a building for a reasonable time to investigate the cause of a blaze after it has been extinguished. And if the warrantless entry to put out the fire and determine its cause is constitutional, the warrantless seizure of evidence while inspecting the premises for these purposes also is constitutional.

*Michigan v. Tyler*, 436 U.S. 499, 510, 98 S.Ct. 1942, 1950, 56 L.Ed.2d 486, 499 (1978) (footnote omitted). In *Tyler* the court also held that a search made a few hours after the fire was permissible because at the time of the extinguishment in darkness, smoke and steam obstructed visibility. However, later searches made without a warrant were held improper and the evidence thus obtained was suppressed. In the instant case, we do not believe that the afternoon search was a "continuation of the first." By the time the afternoon search took place, arson was suspected, and the investigation was a criminal investigation. As the court in *Tyler* indicates, if the purpose of the search is to gather further evidence of a crime, the usual warrant restraints apply. See *id.*, at 508, 98 S.Ct. at 1949, 56 L.Ed.2d at 498. See also *United States v. Acklen*, 690 F.2d 70, 73 (1982).

We believe, however, that the search was proper because of the consent given by the defendant's mother. *United States v. Matlock*, 415 U.S. 164, 171, 94 S.Ct. 988, 993, 39 L.Ed.2d 242, 250 (1974). A third party consent to search is valid if (1) the consent is voluntarily given and (2) the third party has a sufficient relationship

to the premises. *State v. McGann*, 132 Ariz. 296, 300, 645 P.2d 811, 815 (1982). In the instant case, we have no difficulty finding the consent voluntary. The question of sufficient relationship is one of apparent authority. *McGann*, supra. We agree with the Alaska Supreme Court which held:

> We now align ourselves with those authorities, representing the majority view, which hold that apparent authority alone is required. We adopt this view because it is more consistent with the fourth amendment proscription of unreasonable searches and seizures than a rule requiring actual authority regardless of reasonable appearances.

*State v. Nix*, 621 P.2d 1347, 1349–50 (Alaska 1981) (footnote omitted). In the instant case, Mrs. Girdler told the police she was a joint owner of the property which, in fact, she was, and that she had authority to consent to a search. The investigators reasonably believed her, and, possibly in reliance upon this authority, did not obtain a search warrant which apparently would have been supported by the facts in their possession at the time. We believe the consent was valid and that the search did not violate the Fourth Amendment. Because the consent search was valid, the search warrant based in part on evidence obtained during that search was also valid. We find no error.

██ Defendant further contends, however, that a later warrantless search was contrary to the Fourth Amendment. On 2 December, the prosecutor and a police officer went to the scene to determine how long it would take to go from the back door of the mobile home, over to the defendant's car, and then back. During the experiment in question, the prosecutor and the officer measured the time needed to walk or to run from the back door of the burned-out mobile home to the defendant's car (which was still parked near the burned-out mobile home) and back. The intent was to discredit the defendant's claim it took him three to five minutes. By this time (2 December), the consent form signed by Mrs. Girdler on 20 November, by its terms, had expired.

The defendant claims the "evidence" (i.e. the time) was illegally "seized" (and inadmissible) because "the parties were without a warrant and discovery was not inadvertent but rather for conducting a test * *." We do not agree. We have previously stated:

> A search is an intrusion into an area in which a person has a reasonable expectation of privacy. *Terry v. Ohio*, [392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)]. The United States Supreme Court has stated:
>
> > "What a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection. (citations omitted) But what he seeks to preserve as private, even in an area accessible to the public, may be constitutionally protected." *Katz v. United States*, 389 U.S. 347, 351, 88 S.Ct. 507, 511, 19 L.Ed.2d 576, 582 (1967).

*State v. Morrow*, 128 Ariz. 309, 312, 625 P.2d 898, 891 (1981). In *Katz*, supra, Justice Harlan suggested a two-fold test to determine whether an individual has a reasonable expectation of privacy in this area. First, a person must exhibit an actual (subjective) expectation of privacy, and second, the expectation must be one society recognizes as "reasonable." 389 U.S. at 361, 88 S.Ct. at 516, 19 L.Ed.2d at 588. Harlan, J., concurring.

The Ninth Circuit Court of Appeals has agreed with the above reasoning, stating that, "Only where there is an invasion of some reasonable expectation of privacy can police action constitute a search subject to the restrictions of the fourth amendment." *United States v. Humphries*, 636 F.2d 1172, 1179 (9th Cir.1980). In *Humphries*, an officer went onto the defendant's property to check the identity of a car he could see from the street. The court held that the defendant had no reasonable privacy expectation in the identity of the car, and that the officer's actions did not constitute a search for Fourth Amendment purposes. *Id.*

The instant case is analogous to the *Humphries* case. Defendant Girdler left his car on the property which, like the car in *Humphries*, was visible from off the property. The defendant made no effort to conceal the distance between the car and the mobile home, nor did he in any way exhibit an actual, subjective expectation of privacy in this area. From a photograph of the premises, it is obvious that the area was open to the public. We do not find that a search occurred, and therefore, the information obtained was admissible. We find no error.

## ADMISSION OF PHOTOGRAPHS OF THE DECEDENTS

The defendant next claims it was reversible error to admit four black and white photographs of his deceased wife and child at trial. We do not agree.

The first photograph was of the defendant's wife showing her face up on the floor of the child's bedroom. The second showed only the face of the child amid the ashes and char of the fire. The third was a close-up of the head of the wife, showing heat fracture lines in the skull. The last depicts the wife from basically a side angle, showing a table leg that the state claimed might have been used to immobilize the victim before the fire was set. The pictures were in black and white and in our opinion not gruesome or inflammatory.

Photographs of victims may be admitted if they are relevant to an issue in the case, *State v. Purcell*, 117 Ariz. 305, 309, 572 P.2d 439, 443 (1977), and not unfairly prejudicial. Rule 403, Arizona Rules of Evidence, 17A A.R.S. (Supp.1983–84). Whether the photographs are substantially more prejudicial than probative is left to the discretion of the trial judge, and that determination will not be disturbed on appeal absent an abuse of discretion. *State v. Mohr*, 106 Ariz. 402, 403, 476 P.2d 857, 858 (1970). In the instant case, the prosecutor presented the photographs to enable the jury to better understand the testimony of the medical examiner, to show how the defendant might have immobilized his wife

and child prior to the fire, and to show the extreme heat of the fire, indicating a liquid accelerant fire. The state's experts testified that the position of the bodies as shown by the pictures indicated arson rather than accidental causes of the fire. The photographs were relevant, and any prejudice involved in admitting them did not outweigh their probative value. We find no error.

## INSTRUCTION ON CIRCUMSTANTIAL EVIDENCE

During the individual voir dire of the jury, the prosecution was allowed to question each potential juror concerning direct and circumstantial evidence. Later the defendant requested that the following instruction be given:

> Although a conviction may be based solely on circumstantial evidence, such evidence must not only be consistent with guilt but must also be inconsistent with every reasonable hypothesis of innocence.

Rejecting this request, the trial judge gave the following instruction, along with a standard reasonable doubt instruction:

> Under the law, circumstantial evidence is just as worthy as direct evidence *provided* it satisfies the mind beyond a reasonable doubt of the material fact sought to be proved. (Emphasis in original.)

We have held that it is not necessary to give an instruction similar to the defendant's concerning circumstantial evidence to the jury if the jury has been instructed properly as to reasonable doubt. See *State v. Carter*, 118 Ariz. 562, 564, 578 P.2d 991, 993 (1978); *State v. Seelen*, 107 Ariz. 256, 259, 485 P.2d 826, 829 (1971); *State v. Harvill*, 106 Ariz. 386, 391, 476 P.2d 841, 846 (1970). As we stated in *Harvill*, supra, it is "unnecessary to instruct the jury regarding the 'reasonable hypothesis' theory of circumstantial evidence where the jury is properly instructed as to 'reasonable doubt.'" *Id.* 106 Ariz. at 391, 476 P.2d at 846. We believe the jury was properly

instructed under *Harvill* and *Seelen,* supra, and find no error.

The defendant claims, however, that allowing the prosecution to explain the question of circumstantial evidence in the voir dire of the jury unduly weighted the jurors' minds with the issue of circumstantial evidence and, coupled with a failure to give defendant's instruction on reasonable doubt, resulted in reversible error. We do not agree. The jurors were asked if they would give both direct and circumstantial evidence equal weight. It would not be proper to include as a juror a person that did not feel he or she could properly apply the law in this case because he or she could not give circumstantial evidence its proper weight. See *Harvill,* supra, at 391, 476 P.2d at 846. The questions were appropriate and did not overemphasize the weight of the circumstantial evidence. We find no error.

## SUFFICIENCY OF THE EVIDENCE

The defendant claims that the evidence presented at trial is insufficient to support guilty verdicts on the three counts. He claims there is a conflict between the testimony of the state's expert witnesses and the testimony of eye witnesses as to the nature and therefore the cause of the fire. He further claims a rational trier of fact would not find the defendant guilty beyond a reasonable doubt because of this conflict in testimony and the lack of evidence of discord within the Girdler family.

On appeal by the defendant, we must consider the evidence in the light most favorable to sustaining the verdicts, and therefore must resolve all conflicts of evidence against the defendant. Furthermore there must be a complete lack of probative evidence supporting the verdict to mandate reversal. *State v. Carter,* supra, at 563, 578 P.2d at 992. In the instant case, the state's experts all testified that this was an arson fire. The defendant himself stated that his dog would have "torn up" any intruder that might have come into the mobile home to set a fire. The state presented evidence of manner of death

which, according to the state's experts, indicated arson. There were inconsistencies in the defendant's story, and there was evidence of financial problems and some discord within the family.

We believe there was sufficient evidence from which a rational trier of fact (the jury) could have found the defendant guilty beyond a reasonable doubt. See *State v. Toney,* 113 Ariz. 404, 409, 555 P.2d 650, 655 (1976). We find no error.

## DOUBLE JEOPARDY

At the sentencing hearing, the trial judge stated:

It is now necessary to determine whether you should serve these sentences imposable on your convictions concurrently or consecutively. If I determine the sentences should be imposed consecutively, I am required by Arizona Revised Statutes Section 13–708 to set forth on the record my reasons. I have concluded that your sentences should be served consecutively and have done so for the following reasons.

Jennifer Ann Girdler was a baby of the age of two years, a totally innocent and helpless victim, completely dependent upon you not only for the necessities of life but for life itself. Your killing of her constitutes the most vile betrayal of the highest trust which is placed on a human being. While I could not find beyond a reasonable doubt that your crime presented a grave risk of death to others, it is clear nonetheless that it presented a risk of substantial injury not only to the firemen who are required by the code of their profession to risk their lives but also to your neighbor, Tom Tucker, who voluntarily risked his well-being to prevent the possibility of involvement of the natural gas line.

It is mandated in our law that the Court consider in every sentencing the need for establishing a deterrent to others like you who will inevitably consider the same method you adopted to rid yourself of your problems. Such deter-

rence can only occur if in this case you are required to spend the maximum amount of time possible imprisoned for your deed.

The trial judge then sentenced the defendant to consecutive terms on each of the three counts under which he had been convicted. Under that sentencing scheme, the defendant will not be eligible to be considered for parole for sixty-four years. He is now thirty-six years old.

The defendant claims that consecutive sentences for the two murder counts and the arson count violate the Double Jeopardy Clause of the United States Constitution. He argues that the Double Jeopardy Clause prevents multiple punishments for the same offense, citing *North Carolina v. Pierce*, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969), and that under *Harris v. Oklahoma*, 433 U.S. 682, 97 S.Ct. 2912, 53 L.Ed.2d 1054 (1977), if the conviction for a greater crime, i.e. felony murder, cannot be obtained without a conviction of a lesser crime, in the instant case, arson, the Double Jeopardy Clause bars prosecution for the lesser crime after conviction of the greater crime. We do not agree.

We do not believe the *Harris* case, supra, applies to the present case. In that case, the defendant was tried and convicted of felony murder. He was then tried and convicted of the underlying felony, robbery. The Supreme Court held that where a conviction for a greater crime, murder, cannot be had without conviction of a lesser crime, in that case robbery with firearms, the Double Jeopardy Clause bars prosecution for the lesser crime after conviction of the greater crime. That is not the case here. In the instant case, the defendant was convicted of both the greater crime, felony murder, and the lesser crime, arson, during the same trial. The evidence supports all three convictions. There has been no second trial for the lesser crime as there was in *Harris*, supra.

Defendant also claims that the consecutive sentences for the murders and the arson violate the provisions of A.R.S. § 13–116, which states:

An act or omission which is made punishable in different ways by different sections of the law may be punished under both, but in no event may sentences be other than concurrent.

However, this is not an example of "an act or omission which is made punishable in different ways * * *." The crimes of arson and felony murder are separate and distinct, and may be punished separately. *State v. Miniefield*, 110 Ariz. 599, 603, 522 P.2d 25, 29 (1974).

As long as the convictions are for distinct and separate crimes, consecutive sentences are proper if the trial judge sets out his reasons for consecutive sentences. A.R.S. § 13–708; Rule 26.13, Arizona Rules of Criminal Procedure, 17 A.R.S. In the present case the trial judge clearly set forth his reasoning. The decision to impose consecutive sentences rests with the discretion of the trial judge. A.R.S. § 13–708; *United States v. Miller*, 650 F.2d 169, 170 (9th Cir.1980); See *State v. Rumsey*, 130 Ariz. 427, 431, 636 P.2d 1209, 1213 (1981). The trial judge followed the statute, and we find no error.

## TESTIMONY CONCERNING THE DECEASED DOG

The defendant, in a supplemental brief filed pro se, claims it was error to admit testimony concerning a German Shepard mix dog found dead in the wreckage of the home. The body of the dog had been picked up and disposed of shortly after the fire was extinguished. At trial, the state called an animal control officer, Carol Walker, to testify concerning the condition of the dog's remains. The defendant had indicated the dog would have prevented an intruder from entering the house and might have been poisoned. Officer Walker's testimony indicated that the dog had not been poisoned or otherwise incapacitated before the fire.

Defendant first claims that Officer Walker was presented as an "expert" witness, but that there was not sufficient foundation laid for that claim. We do not

agree. Our Rules of Evidence provide that:

[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

Rule 702, Arizona Rules of Evidence, 17A A.R.S. We have stated that:

An expert witness is one who possesses skill and knowledge superior to that of men in general.

*State v. Watson*, 114 Ariz. 1, 12, 559 P.2d 121, 132 (1976), cert. denied 430 U.S. 986, 97 S.Ct. 1687, 52 L.Ed.2d 382 (1977). In the present case, Officer Walker testified concerning her qualifications and experience in dealing with poisoned animals. She testified that she had dealt with poisoned animals approximately twenty times as an animal control officer, and had also had at least one animal of her own poisoned. She testified:

Q Miss Walker, have you had a chance to in your work, to consult with veterinarians and discuss the problems of poisoning in the County and things of that nature?

A Yes, I have.

Q And have you had a chance to read up on the subject yourself?

A Yes, I have.

Q And have you had discussion with veterinarians on what symptoms are of poisoning and what the common types of poisoning dogs get in this area anyway?

A Yes, I have.

Q Do you feel you have a general understanding of what signs to look for in an animal that has been poisoned?

A Yes, I do.

Q And do you think that is something that is necessary in your work, that you have to be familiar with that?

A Yes, I do, because many people mistake poisoning sometimes for a dog that has distemper.

Q So you have utilized this background experience then in your work?

A That's correct.

We believe that the witness possessed skill and knowledge "superior to that of men in general," and the court did not err in allowing her to testify as an expert. *State v. Graham*, 135 Ariz. 209, 212, 660 P.2d 460, 463 (1983).

■ Second, the defendant also claims it was error to admit the testimony concerning the condition of the dog because he was not given the opportunity to examine the remains of the dog for exculpatory evidence, including poisoning. We note that there was no request by the defendant to examine the remains, and while the defendant did object to the officer's qualifications, there was no objection to the admission of testimony based on the inability to examine the remains. By failing to object at the time, defendant has waived the right to object on appeal. *State v. Wilcynski*, 111 Ariz. 533, 535, 534 P.2d 738, 740 (1975). *Accord State v. Martinez*, 127 Ariz. 444, 447, 622 P.2d 3, 6 (1980); *State v. Wilson*, 113 Ariz. 308, 310, 553 P.2d 235, 237 (1976). We find no error.

## CHANGE OF VENUE

■ Finally the defendant claims that he filed a motion for change of venue based on the prejudice of the potential jury resulting from excessive pretrial publicity. We note, however, that there was no motion made for change of venue. A motion to change venue was discussed at the omnibus hearing, but the trial judge indicated that the *motion should be made in writing* two weeks prior to trial. No written motion appears in the record submitted to this court. Rule 10.3 of the Arizona Rules of Criminal Procedure, 17 A.R.S., requires that the motion be made before trial or at the omnibus hearing. The failure to object to venue before trial waives the issue on appeal.

We have reviewed the record for fundamental error pursuant to A.R.S. § 13–4035 and find none.

The convictions and sentences for arson and felony murder are affirmed.

HOLOHAN, C.J., GORDON, V.C.J., and HAYS and FELDMAN, JJ., concur.