770 P.2d 776

**STATE of Arizona, Appellee,**

v.

**Kyle Joseph ZMICH, Appellant.**

**No. CR-88-0028-AP.**

Supreme Court of Arizona,
In Banc.

Feb. 9, 1989.

Robert K. Corbin, Atty. Gen. by William J. Schafer III, Chief Counsel, Criminal Div., and Ronald L. Crismon, Asst. Atty. Gen., Phoenix, for appellee.

Dean W. Trebesch, Maricopa County Public Defender by Paul Klapper, Deputy Public Defender, Phoenix, for appellant.

CAMERON, Justice.

## I. JURISDICTION

Defendant, Kyle Joseph Zmich, was adjudged guilty of murder in the first degree, A.R.S. §§ 13–1101 and –1105, and aggravated assault, a class 3 felony, A.R.S. §§ 13–1204(A)(1), (B) and –1203(A)(1). Defendant was sentenced to life imprisonment without possibility of parole for twenty-five years on the murder charge and to seven and one-half years imprisonment on the aggravated assault charge. A.R.S. §§ 13–701, –702, –703, –604(G). The sentences were to be served concurrently. We have jurisdiction pursuant to Ariz. Const. art. 6, § 5(3), A.R.S. §§ 13–4031 and –4033.

## II. QUESTIONS PRESENTED

Defendant contends generally that the evidence did not support the judgment and specifically that:

(1) the defendant carried his burden by clear and convincing evidence that he was insane at the time of the crime; (2) the evidence did not support a finding of premeditation.

### III.  FACTS

Upon review, we must consider the facts in the light most favorable to sustain the judgments and resolve all conflicts of evidence and all reasonable inferences therefrom against the defendant. *State v. Girdler*, 138 Ariz. 482, 488, 675 P.2d 1301, 1307 (1984); *State v. Williams*, 132 Ariz. 153, 157, 644 P.2d 889, 893 (1982).

At the time of the events in this matter, the twenty-year-old defendant had been living with his mother, stepfather and six-year-old half brother in a mobile home in Mesa, Arizona for about three weeks. On the evening of 9 March 1987, defendant's mother discussed with him the need to meet with a probation officer who could prepare a presentence report in connection with defendant's appearance in court the next day on a theft charge. She also indicated to him that she wanted him to become involved in a drug rehabilitation program to overcome his alleged drug addiction.

Defendant's stepfather took away the defendant's headphones so that he could not listen to music and told him to go to bed so that he could get up early for his court appearance. Defendant refused to go to bed at that time and stated that he was going to stay up until he finished his coffee.

Defendant waited until his parents went to bed at about 10:30 p.m. He then unlocked the latches on the two sliding glass doors which allowed ingress and egress to the mobile home and removed some dowels from within the door tracks. He then stacked paper towels on a hot plate on the kitchen stove so that the towels would ignite and start a fire. Defendant then obtained a kitchen knife and knocked on the bedroom door. He explained that he had a stomachache. His mother who had just finished a shower said she would come and give him some medicine.

When defendant's mother entered the kitchen, defendant stabbed her in the throat with such force that the knife blade broke near the handle. Defendant then hid behind a chair in the living room adjoining the kitchen. Responding to his wife's screams, defendant's stepfather rushed to her side to assist her, and defendant stabbed his stepfather three times in the back area. Because the knife blade had broken off, the stepfather's injuries were not life-threatening. The stepfather regained his balance and proceeded towards the defendant. Defendant backed away, jumped out one of the sliding glass doors, went next door to a neighbor's house and had them call the police. Defendant's mother died from the stab wound.

When questioned by police officers, defendant explained that his mother and stepfather had been bugging him and that he was upset with them. He said he took a large knife from the kitchen drawer and was going to take it into his parents' bedroom and stab his stepfather. When asked if he knew it was his mother that was coming into the kitchen, he responded, "Yes, I knew it was my mother, and I intended to stab her when I went to get the knife out of the kitchen drawer because she was tripping out and bugging me."

Defendant was charged with first degree murder and aggravated assault. Mental health experts were appointed to examine defendant and the trial court found that the defendant was competent to stand trial. Defendant agreed to waive his jury trial and submit his plea of not guilty by reason of insanity to the trial court based upon the police reports, letters from lay people and records in the file. In return, the county attorney agreed not to ask for the death penalty. It is permissible to submit the question of guilt on a stipulated record as long as the proper procedures are followed. Ariz.R.Crim.P. 18.1(b), 17 A.R.S.; *State v. Steelman*, 126 Ariz. 19, 24–25, 612 P.2d 475, 480–81, *cert. denied*, 449 U.S. 913, 101 S.Ct. 287, 66 L.Ed.2d 141 (1980); *State v. Avila*, 127 Ariz. 21, 24–25, 617 P.2d 1137, 1140–41 (1980). In the instant case, the proper procedures were followed. The tri-

al court found defendant guilty of both counts and after the trial court denied his motions to set aside the judgment and for a new trial, defendant appealed.

## IV. WAS DEFENDANT INSANE?

Defendant first contends that the trial judge abused her discretion in finding that the defendant failed to carry his burden of establishing insanity by clear and convincing evidence. Our statute provides that:

A. A person is not responsible for criminal conduct by reason of insanity if at the time of such conduct the person was suffering from such a mental disease or defect as not to know the nature and quality of the act or, if such person did know, that such person did not know that what he was doing was wrong.

B. The defendant shall prove he is not responsible for criminal conduct by reason of insanity by clear and convincing evidence.

A.R.S. § 13–502(A), (B).

Paragraph (A) of this statute adopts what is known as the *M'Naghten* rule which has historically been followed in this state. Paragraph (B) provides that when the defendant interposes a defense of not guilty by reason of insanity, the defendant must bear the burden of proof to establish by clear and convincing evidence that he is not responsible for the criminal conduct by reason of his insanity. A.R.S. § 13–502(B). Paragraph B is a recent change from the old rule that once defendant's insanity had been put in issue, the state had the burden of proving the defendant sane. *State v. Clabourne*, 142 Ariz. 335, 345, 690 P.2d 54, 64 (1984).

Three psychiatrists and one psychologist presented reports to the court regarding defendant's mental condition at the time of the crime.

**Carl Wellish, M.D.,** concluded that defendant was "suffering from a delusional (paranoid) disorder # 297.12 DSM III–R and that he was therefore not responsible under [*M'Naghten*]."

**Jack Potts, M.D.,** found that defendant was "psychotic at the time of the alleged offense and truly not able to distinguish right from wrong or to conform his conduct as required by that of the law."

**George A. Peabody, M.D.,** found that defendant was "not criminally responsible under the [*M'Naghten*] rule, i.e. because of his mental illness he was grossly psychotic and as a result of which his behavior and judgment were so effected that he was unable to properly distinguish between right and wrong or to appreciate the nature and consequences of his acts."

**Richard Lanyon, Ph.D.,** the only psychologist to conduct an examination of appellant, stated, "It is my opinion that Mr. Zmich *was not insane* by the Arizona statement of the [*M'Naghten*] rule, at that time. As indicated in my report, I believe he was suffering from a mental disorder at the time, involving paranoid thought processes. However, I believe that he knew what he was doing (assaulting his mother) and also that it was wrong to do so."

If we consider the reports only, it would appear that the defendant carried his burden by clear and convincing evidence that he was *M'Naghten* insane at the time of the crime. The trial judge, however, after noting that she had seriously considered the opinions and the discussions raised in the letters, reports and supplements submitted by the doctors, found that at the time of the offenses on 9 March 1987, the defendant was suffering from a recognized mental disorder that was possibly aggravated by voluntary consumption of alcohol and drugs. The trial judge stated:

I am also going to find at this time that the combined facts as presented to me, reviewed in light of all of the medical reports, do not reach the threshold of proving beyond a clear and convincing standard that you were legally insane on that date.

The doctors disagree, they use different facts, different interviews, different processes upon which to determine their medical opinion on the state of your mental health or mental state. Compiling all of their medical opinions, psychiatric and

psychological opinions with all of the facts presented to me, reviewing specifically your conduct of the day giving rise to the criminal offenses, giving rise to your deeply held anger for your mother and your stepfather over many years, considering your behavior and immediately before, during, and after these assaults and then the statements that you made thereafter, I do not find that the defense has met its burden that you were [*M'Naghten*] insane at the time of these two offenses.

The fact that only one expert testified that the defendant was not *M'Naghten* insane at the time of the crime while three experts claimed he was *M'Naghten* insane is not dispositive of this issue. The trier of fact may reject one or more of the experts' opinions and give more credence to lay witness testimony and other evidence in determining whether or not a defendant comes within the purview of the statute. *State v. Cano*, 103 Ariz. 37, 42, 436 P.2d 586, 591 (1968). In a case in which a defendant was attempting to show his mental state at the time of the crime through the testimony of his wife and parents, we stated:

> The general rule is that a lay witness, if competent, may testify to relevant evidence. *See* Rules 402, 601, 602, 701, Ariz.Rules of Evidence, 17A A.R.S. In Arizona lay testimony has long been admissible in criminal trials on the issue of sanity. *See State v. Sanchez*, 117 Ariz. 369, 373, 573 P.2d 60, 64 (1977); *State v. Coey*, 82 Ariz. 133, 139, 309 P.2d 260, 264 (1957); M. Udall & J. Livermore, *supra* § 21 at 26; *Wharton's Criminal Evidence* § 609 at 175 (13th ed. 1973). Foundationally, a lay witness must have had an opportunity to observe the past conduct and history of a defendant, *State v. Coey*, 82 Ariz. at 139, 309 P.2d at 264; the fact that he is a lay witness goes not to the admissibility of the testimony but rather to its weight. *Id.* If lay testimony is admitted, logically, a jury is free to accept it as a basis for its verdict. *State v. Overton*, 114 Ariz. 553, 562 P.2d 726 (1977). This is so even if there is con-

flicting medical testimony on the issue. *Id.*

*State v. Bay*, 150 Ariz. 112, 116, 722 P.2d 280, 284 (1986). There was also evidence in the instant case of defendant's sanity including the stepfather's testimony that defendant was malingering and that he appeared to be feigning mental illness.

The rule is not what we would do if we were deciding the case, but whether or not we can say that the trial judge abused her discretion in reaching the conclusions she did. *State v. Toney*, 113 Ariz. 404, 555 P.2d 650 (1976). In the instant case, we do not find an abuse of discretion in the trial court's decision that the defendant had not proved by clear and convincing evidence that he was *M'Naghten* insane at the time of the crimes.

## V. PREMEDITATION

■ Defendant contends that he was not guilty of premeditation and that therefore the first degree murder conviction must be set aside. Premeditation is an element of first degree murder.

> "Premeditation" means that the defendant acts with either the intention or the knowledge that he will kill another human being, when such intention or knowledge precedes the killing by a length of time to permit reflection. An act is not done with premeditation if it is the instant effect of a sudden quarrel or heat of passion.

A.R.S. § 13–1101(1). We have stated that in order to establish premeditation:

> In order to show premeditation, the state must prove Neal acted with either the intent or knowledge that he would kill Mary Carter and that such intent or knowledge preceded the killing by a length of time to permit reflection. A.R.S. § 13–1101(1). This length of time could have been as instantaneous as it takes to form successive thoughts in the mind, and premeditation may be proven by circumstantial evidence. *State v. Lacquey*, 117 Ariz. 231, 234, 571 P.2d 1027, 1030 (1977).

*State v. Neal*, 143 Ariz. 93, 97, 692 P.2d 272, 276 (1984).

In the instant case, there is ample evidence of premeditation. The placing of papers on the hot plate, the opening of the doors so that defendant could make a ready escape if the house caught fire, the obtaining of the knife and going to the bedroom door seeking to entice the stepfather and/or mother out of the bedroom establish facts that are more than sufficient to support a finding of premeditation. We find no error.

## VI. FUNDAMENTAL ERROR

We have reviewed the record for fundamental error as required by A.R.S. § 13–4035, *Anders v. California,* 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967) and *State v. Leon,* 104 Ariz. 297, 451 P.2d 878 (1969). We find no error.

## VII. DISPOSITION

The defendant's judgments of guilty and sentences are affirmed.

GORDON, C.J., FELDMAN, V.C.J., and MOELLER, J., concur.

HOLOHAN, J., retired prior to the filing of this opinion.

CORCORAN, J., did not participate in the determination of this matter.