842 P.2d 1295

**The STATE of Arizona, Appellee,**

v.

**Harold Brent BARNETT, Appellant.**

**No. 2 CA–CR 90–0121.**

Court of Appeals of Arizona, Division 2, Department B.

Nov. 29, 1991.

Review Denied Jan. 12, 1993.

---

Grant Woods, Atty. Gen. by Paul J. McMurdie and Jon G. Anderson, Phoenix, for appellee.

Susan A. Kettlewell, Pima County Public Defender by Kristine Maish, Tucson, for appellant.

OPINION

ROLL, Presiding Judge.

Appellant Harold Barnett was convicted of aggravated assault and sentenced to three years' probation with the condition that he serve six months in the county jail. For the following reasons, we affirm.

FACTS

In viewing the evidence in the light most favorable to sustaining the verdict, *State v. Zmich*, 160 Ariz. 108, 770 P.2d 776 (1989), the facts are as follows. The victim was a dentist who was in the process of opening a new office in a small shopping center and who was waiting early one morning for telephone installers to arrive. Because the weather was nice, the victim was sitting outside by a pillar doing paperwork.

Barnett and a co-defendant approached the victim and asked him for the time. The victim told them the time. As the two men began to walk away, the victim saw in the reflection on the window what he thought were guns in their hands. The victim, who was still sitting in front of his new office, turned to his right, and saw Barnett swinging around the pillar. Barnett hit the victim with his fist in the right eye. The victim then dropped down to his hands and knees in order to try to get away and felt one of the men, later identified as Barnett, on top of him. He then began to feel a series of electrical shocks on his chest underneath his heart.

The victim struggled to stand and began yelling for help. Barnett called to the co-defendant for help, and the co-defendant began striking the victim from behind. The victim testified that he also felt some electrical shocks in his back at the same time that he felt shocks on his chest. The victim then grabbed Barnett and threw him against the victim's car. The victim next turned to the co-defendant, who fled along with Barnett. The victim was unable to pursue his assailants because he was exhausted from the attack.

A witness who saw part of the attack followed the men and later directed the police to a dead end street where they were

found out of breath and sweating. Barnett had blood on his hand. Photographs were introduced into evidence showing the victim's injuries. He testified that some of the scrapes and cuts corresponded to places where he had felt the electrical shocks.

Barnett testified that when he asked the victim the time, the victim had responded with an expletive, and Barnett replied in kind. He testified that the victim took a swing at Barnett, grabbed him around the waist, and threw him against a car, ripping his clothes. Barnett had an electrical stun device fastened on his belt with which he poked the victim after he was attacked. Barnett said he carried the stun device to ward off potentially dangerous dogs. He testified that the victim knocked the device from his hand and that he was able to get away only by calling the co-defendant to help him. The stun device was never found.

## ISSUES ON APPEAL

Barnett argues on appeal that the trial court (1) committed fundamental error in failing to instruct the jury on attempted aggravated assault and (2) erred in denying his motion for a directed verdict. Barnett further contends that he did not receive proper notice of the crime of which he was convicted because the testimony to the grand jury deviated from the testimony at trial.

## ATTEMPTED AGGRAVATED ASSAULT

■ Barnett first argues that the failure of the trial court to instruct the jury on attempted aggravated assault was reversible error. Yet, Barnett neither requested such an instruction nor objected when one was not given. The fact that Barnett's co-defendant made an objection is irrelevant to Barnett's appeal. Absent fundamental error, an issue is waived on appeal unless objected to at trial. *State v. Holder*, 155 Ariz. 83, 85, 745 P.2d 141, 143 (1987). An error is fundamental when it goes to the "foundation of the case or takes from the defendant a right essential to his defense." *State v. Burton*, 144 Ariz. 248, 251, 697 P.2d 331, 334 (1985). -The United States

Supreme Court has stated that it is the "rare case in which an improper instruction will justify reversal of a criminal conviction when no objection has been made in the trial court." *Henderson v. Kibbe*, 431 U.S. 145, 154, 97 S.Ct. 1730, 1736, 52 L.Ed.2d 203, 212 (1977).

■ The absence of an instruction regarding attempted aggravated assault does not rise to the level of fundamental error in this case. Attempted aggravated assault was simply never an issue before the jury. Barnett did not deny causing physical injury to the victim; instead, he claimed that his actions were justified by self-defense. The jury was adequately instructed on the crimes of simple assault and aggravated assault. We find this to be sufficient.

## DENIAL OF DIRECTED VERDICT MOTION ·

Barnett contends that the court should have granted his motion for a directed verdict on the charge of aggravated assault, arguing that there was insufficient evidence that the victim was physically restrained or substantially impaired at the time of the assault. Barnett was charged with aggravated assault pursuant to A.R.S. § 13–1204(A)(8), an assault committed "while the victim is bound .or otherwise physically restrained or while the victim's capacity to resist is substantially impaired." That subsection of the aggravated assault statute was adopted when our criminal code was revised in 1978. R. Gerber, *Criminal Law of Arizona* pp. 170–71 (1978). The subsection was neither part of the Criminal Code Commission proposal nor did it arise from prior case law. *Id.* It was instead inserted by the legislature when the new code was enacted. *Id.* There are no cases interpreting the subsection.

■ A judgment of acquittal should be granted when "there is no substantial evidence to warrant a conviction." Rule 20(a), Ariz.R.Crim.P., 17 A.R.S. In ruling on a motion for a directed verdict motion, a trial judge must determine whether "a reasonable person could fairly conclude the defen-

dant is guilty beyond a reasonable doubt," given the jury's right to determine the credibility of the witnesses and to weigh the evidence. *State v. Clifton*, 134 Ariz. 345, 348, 656 P.2d 634, 637 (App.1982). The judge must deny the motion if reasonable minds could differ on a defendant's guilt. *Id.* To mandate reversal, there must be a complete lack of probative evidence supporting the verdict. *State v. Girdler*, 138 Ariz. 482, 675 P.2d 1301 (1983), *cert. denied*, 467 U.S. 1244, 104 S.Ct. 3519, 82 L.Ed.2d 826 (1984).

■ Restraint has been defined as confinement, abridgment, limitation, or prohibition of action. *Black's Law Dictionary* p. 1181 (5th ed. 1979). The victim testified as follows:

> I was hit and I dropped down on my hands and knees. And one of them was on top of me. I was being—I don't know. I thought this gun was underneath my heart and it kept—kept hitting up underneath my heart. And I kept feeling like an electrical shock.
>
> \*    \*    \*    \*    \*    \*
>
> And I struggled, tried to try to get up.

This testimony sufficiently supports a conviction for aggravated assault based upon an assault occurring while the victim is physically restrained.

### PROOF VARIATIONS

■ In his last point on appeal, Barnett argues that the state presented a different theory of proof to the grand jury than was established at trial. Barnett argues that the grand jury heard evidence suggesting that the victim was restrained by the stun gun, whereas proof at trial established, at most, that the victim was restrained by the two assailants acting in concert. Barnett contends that this case is analogous to *State v. Martin*, 139 Ariz. 466, 679 P.2d 489 (1984). There, the grand jury heard evidence that the defendant sold cocaine to a third person while at trial the state contended that the defendant sold the narcotic drug to a co-defendant. The supreme court ruled that the defendant had no notice that the state would contend that the co-defendant, named as a seller in the indictment, would also be the party to whom the drugs were being sold.

The instant case is factually distinguishable from *Martin*. Here, the grand jury heard evidence of two individuals assaulting the victim, at least one of whom used a stun gun during the assault. The trial court heard similar evidence, with the exception that the stun gun was apparently not as disabling as first believed. The state's proof at trial was not of uncharged and unanticipated conduct.

### CONCLUSION

We have searched the record for fundamental error and found none. We affirm.

HATHAWAY, J., concurs.

FERNANDEZ, Judge, dissenting.

I dissent. I believe that the trial court erred in denying appellant's motion for a directed verdict as to aggravated assault and that the case should have been submitted to the jury on a charge of simple assault only.

The assault in this case was a brief one. The victim was hit in the eye by appellant as he sat by a concrete pillar. He testified that he dropped to his knees so he could stand up and run away from his assailant. As he attempted to stand, he felt appellant on his back. At the same time, the victim began to feel electrical shocks on his chest from the stun device appellant was using on him.

The victim struggled free and finally stood up. At that point, appellant yelled for help from his co-defendant. The victim testified that he then felt electrical shocks on both his chest and back at the same time. After that, the victim threw appellant against the victim's car and turned to the other man, who promptly fled. The victim then turned back to appellant and discovered he had also fled. The co-defendant was acquitted.

A certified stun device instructor testified that a stun device releases electricity into the target and that the resulting discharge is painful and discomforting but not

dangerous. It cannot kill anyone or interfere with a person's heartbeat. A stun device causes the voluntary muscles to work involuntarily and is most effective when it is used on high muscle, nerve-rich areas of the body. The device must touch the body in order to stun a person. Neither fatty nor bony areas of the body conduct the electricity well.

The expert testified that a "take-down situation," in which a person is incapacitated for several minutes, requires that the person be held by someone else while the stun device is applied to the proper muscle tissue for two to eight seconds. When the device is properly applied for a take down, the person will be groggy and disoriented for up to fifteen minutes. He testified that simply thrusting the device against the person would not incapacitate the person.

Appellant was charged with aggravated assault pursuant to A.R.S. § 13–1204(A)(8), an assault committed "while the victim is bound or otherwise physically restrained or while the victim's capacity to resist is substantially impaired." Under the applicable standard for ruling on a motion for directed verdict, I believe there was a complete lack of probative evidence of aggravated assault under this statute. *State v. Girdler,* 138 Ariz. 482, 675 P.2d 1301 (1983), *cert. denied,* 467 U.S. 1244, 104 S.Ct. 3519, 82 L.Ed.2d 826 (1984).

The evidence was clearly insufficient on the issue of whether the victim's capacity to resist was substantially impaired. There was no evidence that one of his assailants held him while the other applied the stun device for a number of seconds, requirements which the expert testified were necessary for a "take-down situation." The evidence showed that the victim had numerous cuts and scratches consistent with someone who was struggling against the stun device. There was no testimony that the victim was ever rendered groggy and disoriented. The victim also gave the following testimony on cross-examination:

> Q. ... It's fair to say that the stun gun didn't have a lot of effect on your physical mobility?

A. It certainly didn't have enough of an effect to stop me from fighting.

Q. So it's fair to say that it didn't have a lot of effect on your physical mobility to stop you from fighting?

A. I was able to get up; that's true.

Q. So you could continue fighting?

A. I did continue to fight.

Q. And you could get up without any problems?

A. There was a lot of problems.

Q. I think it's also fair to say that it didn't have—the stun gun didn't have a lot of effect at all; isn't that right?

A. Ma'am, I couldn't tell you what a lot is or what—all I know, it seemed—

Q. I am going to ask you now, just flip the page over in the interview....

&ast; &ast; &ast; &ast; &ast; &ast;

Q. Okay. And I think Mr. Cruikshank asked you if you could describe the effect that one of those devices had on your physical mobility. Do you remember that question now?

A. I do.

Q. And your answer was, 'Not a lot. [sic]'?

A. Not enough to keep me from getting out of their grasp, that's true.

The dictionary definition of "impair" is "to make worse: diminish in quantity, value, excellence, or strength: do harm to: DAMAGE, LESSEN." *Webster's Third New International Dictionary* p. 1131 (1971). "Substantial" is defined as "considerable in amount, value, or worth." *Id.* at 2280. The evidence presented here certainly supports a determination that the victim's capacity to resist was impaired; it does not, however, support a determination that his ability to resist was *substantially* impaired.

Nor do I believe that the evidence was sufficient to show that the victim was "otherwise physically restrained." A.R.S. § 13–1204(A)(8). I believe that the use of the word "or" in the statute reflects the legislative intent that the physical restraint required be roughly equivalent to the restraint that exists when a victim is bound.

There was no evidence here that one of the men held the victim while the other hit him. The only testimony about the two men acting in concert was that the victim at one time felt electrical shocks in both his chest and back. That occurred after the time during which the victim was struggling to stand. The only evidence of physical restraint was the victim's testimony that appellant was "on top of" him when he first felt electrical shocks in his chest, also caused by appellant. Thus, appellant momentarily prevented the victim from standing up.

I believe that the statute requires something more substantial than the momentary restraint that occurred in this case before a class 1 misdemeanor can be elevated to a class 6 felony. The majority's interpretation of the statute would have the effect of converting nearly every fight to a felony simply because the victim at some point is required to struggle to break free from the other person's grip on his hand, arm, leg, back or whatever.

I would remand for appellant to be resentenced on a charge of simple assault.