892 P.2d 212

**STATE of Arizona, Appellee,**

v.

**Alex SANCHEZ, Appellant.**

**No. 1 CA–CR 93–0414.**

Court of Appeals of Arizona,
Division 1, Department E.

March 21, 1995.

As Amended March 30, 1995.

---

1. The Honorable J. Thomas Brooks, Retired, was authorized to participate in this appeal by the Chief Justice of the Arizona Supreme Court pursuant to Ariz. Const. art. VI, § 20 and Ariz.Rev. Stat.Ann. § 38–813.

Grant Woods, Atty. Gen. by Paul J. McMurdie, Chief Counsel, Crim. Div., and Monica Beerling, Asst. Atty. Gen., Phoenix, for appellee.

Richard D. Engler, Yuma, for appellant.

## OPINION

LANKFORD, Presiding Judge.

This is a direct appeal by Alex Sanchez, defendant, from a judgment by the trial court finding him guilty of obstructing a criminal investigation, a class five felony.

Defendant raises one issue on appeal: is photographing an unmarked police car punishable as obstruction of a criminal investigation, a violation of Ariz.Rev.Stat.Ann. ("A.R.S.") section 13-2409?

We view the evidence in the light most favorable to upholding the conviction. *State v. Nunez*, 167 Ariz. 272, 806 P.2d 861 (1991); *State v. Barger*, 167 Ariz. 563, 810 P.2d 191 (App.1990). The essential facts are as follows. In August 1992, Agent Atwell, an undercover narcotics agent for the Southwest Border Alliance, arrested Larue Sanchez, the wife of defendant, for possession and transportation of dangerous drugs and possession of drug paraphernalia. Atwell had known Larue Sanchez for several years. She had also worked with the Southwest Border Alliance as a confidential informant.

While arresting her, Atwell seized Larue Sanchez's purse as evidence. Later, she asked for some personal belongings from her purse. Atwell agreed to meet her at the jail that evening to return the items and arranged to have Agent Hefner, another undercover agent, present as well.

When Atwell arrived, he saw several camera flashes. He discovered that defendant was taking photographs. Atwell told defendant not to photograph him or his undercover car, but defendant refused. When defendant attempted to take more photographs, Atwell tried to grab the camera from him. Then Larue Sanchez came running to the scuffle, screaming and yelling that she would "get even" with Atwell. Atwell abandoned the camera and left after Hefner intervened.

Defendant and Larue Sanchez were later indicted for obstructing criminal prosecution, a class 5 felony, and influencing a witness, also a class 5 felony. A.R.S. §§ 13-2409, 13-2802, 13-701, 13-801. Defendant pled not guilty. The defense later filed a motion to dismiss on the grounds that defendant's actions were not illegal. The court denied the motion.

Defendant waived his right to a jury trial and a bench trial began. The state called two witnesses, Agents Atwell and Hefner.

Atwell testified that defendant photographed his car. The record is unclear whether defendant also photographed Atwell. Atwell stated that an anonymous caller said photographs and the license plate numbers of

agents' vehicles were being disseminated. His testimony did not reveal whether the caller had stated what the photographs depicted. Later, Atwell received a list from drug users and traffickers that identified undercover officers, their cars, and their license plate numbers. He claimed to have never before received this type of information from anyone.

Hefner testified that defendant telephoned him and while they were speaking, Larue Sanchez interrupted defendant and told Hefner that she found out it was illegal for her to take the photographs and that she was going to "submit them." At the end of the State's evidence, defendant made a motion for acquittal, and the court denied the motion.

Defendant testified and admitted that he took one photograph of Agent Atwell's car, but he denied photographing any other undercover cars or agents. Defendant stated that a couple of weeks after taking the photograph, he gave some undeveloped rolls of film to the police. Those rolls of film contained photographs of other undercover vehicles. Defendant claimed that he did not take those photographs, but he did not identify who did. He said that it was never his intention to interfere with the prosecution of his wife or to endanger, threaten, or intimidate the officers. Rather, his avowed purpose was to force the officers to give up their jobs as undercover agents by revealing their identities.

The trial court denied a renewed motion for a judgment of acquittal, found defendant guilty of obstructing a criminal investigation or prosecution, and acquitted him of the charge of influencing a witness. After a sentencing hearing, the trial court suspended imposition of sentence and placed defendant on probation for twenty-four months.

■ Defendant was entitled to acquittal only "if there is no substantial evidence to warrant a conviction." Rule 20, Ariz. R.Crim.P. In *State v. Goswick*, the Arizona Supreme Court defined substantial evidence as "such proof as a reasonable mind would employ to support the conclusion reached." 142 Ariz. 582, 586, 691 P.2d 673, 677 (1984). To reverse a trial court's denial of a motion

for judgment of acquittal, the record must reveal a complete lack of probative evidence supporting the verdict. *State v. Girdler*, 138 Ariz. 482, 488, 675 P.2d 1301, 1307 (1983), *cert. denied*, 467 U.S. 1244, 104 S.Ct. 3519, 82 L.Ed.2d 826 (1984); *State v. Barnett*, 173 Ariz. 282, 285, 842 P.2d 1295, 1298 (App. 1991).

The sufficiency of the evidence to convict must be measured by the elements of the offense for which defendant was convicted. The offense is defined by A.R.S. section 13-2409, which states:

A person who knowingly attempts by means of ... intimidation or force or threats of force to obstruct, delay or prevent the communication of information or testimony relating to a violation of any criminal statute to a police officer, magistrate, prosecutor or grand jury or who knowingly injures another in his person or property on account of the giving by the latter ... any such information or testimony to a peace officer, magistrate, prosecutor or grand jury is guilty of a class 5 felony.

The trial court based defendant's conviction on the second half of the statute rather than the first half. However, on appeal the State supports the conviction only by arguing that defendant's conduct violated the first half of the statute. The State does not discuss how the conviction can be sustained on a basis other than that used by the trial court. Nevertheless, we address whether defendant's conduct was an offense under either part of the statute.

■ The first half of the statute prohibits one from knowingly attempting, through intimidation, force or threat of force, to interfere with the communication of information or testimony about a crime. The State contends that the mere photographing of Atwell and his car was sufficient to prove commission of its offense. However, the State offers neither authority nor explanation in support of this contention. The State may present circumstantial as well as direct evidence in proving the elements of an offense; however, it may not rely on pure speculation. *See*

*State v. Mathers,* 165 Ariz. 64, 70–71, 796 P.2d 866, 872–73 (1990).

█ The statute requires that the State prove that defendant intimidated Atwell. The State has not done so. *Webster's Third New International Dictionary,* (G. & C. Merriam & Co. 1969), one of the dictionaries most frequently cited in Arizona cases,[1] defines "intimidate" as: "to make timid or fearful: FRIGHTEN; *esp:* to compel to action or inaction (as by threats)." While this may include nonverbal threats, a key element to the definition is the fear or other response by the target of the intimidation. No evidence indicated that Agent Atwell was frightened because defendant photographed his vehicle.

The State argues that the elements of the statute are satisfied by evidence that defendant disseminated the photographs of Atwell's undercover vehicle and a list of undercover agents and cars. This implies that Atwell's fear could be inferred from the knowledge that pictures of his car and a list were being circulated in the drug underworld. However, the State failed to produce any evidence that it was defendant who disseminated the photographs or the list. The State provided only the evidence that defendant photographed Atwell's car. The person who circulated the list or photographs could have been defendant's wife or a third person.[2]

Moreover, courts in other jurisdictions generally have held that the mere act of disseminating information regarding the identity of undercover officers by itself, even with the intent to warn others not to commit crimes because an undercover officer is present, does not constitute obstruction of justice. For example, in *State v. Jelliffe,* 5 Ohio Misc.2d 20, 449 N.E.2d 810 (1982), the defendant was attending a rock concert where he recognized a policeman in "street clothes." Defendant then told another person, within the officer's hearing, that the officer was "a cop." *Id.* The Ohio court held that revealing the identity of an undercover officer to others is not a violation of the statute prohib-

iting the obstruction of official business where there was no allegation that defendant's warning prevented the apprehension of any persons who were then violating the law. *Id.* at 20–21, 449 N.E.2d at 810–11.

In *Cover v. State,* 297 Md. 398, 466 A.2d 1276 (1983), the defendant drove slowly down a public street sounding her automobile horn for up to two minutes for the purpose of alerting a third person that he was under observation by a plainclothes officer who was suspicious that the third person might attempt to break and enter a storehouse. The court found that Cover did intend to obstruct justice but acquitted her. The court reasoned that although officers would not be able to conduct successful "stakeouts" if someone followed them blowing their horn or yelling and screaming, the crime could not be based solely on intent: there must be some degree of hindrance in fact. *Id.* 466 A.2d at 1285.

Finally, in *People v. Lopez,* 97 Misc.2d 124, 410 N.Y.S.2d 787 (1978), the defendant recognized a plainclothes officer on a subway platform. The defendant then repeatedly shouted out the fact that the officer was a police officer and warned those within hearing to refrain from doing anything wrong. The court found that while defendant's conduct made it more difficult to perform plainclothes duty, it did not violate a statute against "obstructing governmental administration." The court stated that the purpose of the statute is to make the interruption of administrative governmental operations a criminal act. *Id.* 97 Misc.2d 124, 410 N.Y.S.2d at 788 (quoting *People v. Offen,* 96 Misc.2d 147, 408 N.Y.S.2d 914, 916 (1978)).

Photographing a police officer is not per se illegal. Nor is circulating photographs of police officers. Following the rationale of these cases, such activity becomes illegal only if it is engaged in knowingly and attempts to interfere with the investigation or prosecution of the person to whom the undercover officer's identity is revealed. If anyone else—such as a passerby or a newspaper

---

1. *Sierra Tucson, Inc. v. Pima County,* 178 Ariz. 215, 220, 871 P.2d 762, 767 (App.1994).

2. Atwell worked with other informants and admitted that the undercover cars were left in an unguarded parking lot.

**496**

reporter—had photographed a police officer, we doubt that anyone would consider the conduct unlawful.

 Under the second half of the statute, the State has the burden of proving two elements: (1) the accused knowingly injured another in his person or property (2) on account of the giving by the latter information or testimony to a peace officer.

The State's proof arguably met the second element. Defendant admitted during trial that his motive for taking Atwell's photograph was to force him to give up his job as an undercover agent with the Southwest Border Alliance. He stated that he did this because he felt that Atwell had unjustly arrested his wife.

However, the State failed to prove the first element. The trial court took an expansive view of the words, "in his person." A.R.S. § 13–2409. The trial court found that "in his person" may include the officer's concern for himself or his family. We disagree. Person refers to the physical body, thereby requiring an actual physical injury. *Webster's Third New International Dictionary, supra,* defines "person" as "... **4a** (1) *archaic:* bodily appearance <had a goodly (person)> ... **b:** the body of a human being as distinguished from the mind <pure in mind and (person)>." The State provided no evidence showing that Atwell was bodily injured.

Therefore, we consider whether Atwell's property was injured. We have held that when an employee has a permanent status as a state employee and is subject to dismissal only for cause, the employee has a property interest in his employment. *Zavala v. Arizona State Personnel Bd.,* 159 Ariz. 256, 260–61, 766 P.2d 608, 612–13 (App.1987). Therefore, assuming that Atwell has a property interest, the State must still prove that Atwell's job was injured and that defendant injured it.[3] The State has proved neither. No evidence showed that Atwell was forced to give up his job as an undercover agent.[4] Moreover, no evidence linked defendant to the list of cars and agents that Atwell received, and no evidence otherwise proved that defendant revealed any undercover agent's identity.

We hold that because there was insufficient evidence to enable the trier of fact to find guilt beyond a reasonable doubt, the trial court erred in denying the motion for judgment of acquittal. Accordingly, we reverse the decision of the trial court and vacate the conviction.

NOYES and GARBARINO, JJ., concur.

---

3. Unlike the first half of the statute which prohibits *attempts* of intimidation or force, attempts to injure a person's body or property are not punishable under the second half of the statute.

4. We also note that even if Atwell had given up his job as an undercover officer but continued to work as a uniformed officer, he may not have lost the property interest in his employment.