NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

JOSE MANUEL CASTILLO, *Appellant.*

No. 1 CA-CR 21-0053
FILED 4-26-2022

Appeal from the Superior Court in Maricopa County
No. CR2019-001888-001
The Honorable Teresa A. Sanders, Judge *Retired*

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Gracynthia Claw
*Counsel for Appellee*

Maricopa County Public Defender's Office, Phoenix
By Mikel Steinfeld
*Counsel for Appellant*

---

**MEMORANDUM DECISION**

Presiding Judge Peter B. Swann delivered the decision of the court, in which Judge David D. Weinzweig and Judge Paul J. McMurdie joined.

---

**S W A N N**, Judge:

¶1   Jose Manuel Castillo appeals from his conviction and sentence of attempt to commit second-degree murder, challenging the sufficiency of the evidence. For the following reasons, we find the evidence at trial to have been sufficient and therefore affirm.

## FACTS AND PROCEDURAL HISTORY

¶2   Castillo and Irene were married for 37 years and had four children. In May 2018, Irene left the marital home and filed for divorce. She obtained an order of protection against Castillo the following month. Irene testified she applied for the order of protection because Castillo insisted she was having an affair, followed her "all over," and sent messages to her employer. The divorce was finalized on February 14, 2019.

¶3   Irene works as a nursing assistant. On March 11, 2019, she pulled into her employer's parking lot around 5:30 a.m. As she walked from the parking lot to the building, Castillo grabbed her from behind and put a gun to her head. While pointing the gun at her, Castillo asked Irene why she had cheated on him and told her that "it's all over." A struggle ensued, during which two shots were fired. Castillo then knocked Irene to the ground and pointed the gun at her. He tried to pull the trigger, but the gun jammed. He then "prepared [the gun] again," but did not shoot because he was interrupted by an off-duty police officer, Officer Banks.

¶4   Banks testified that when he arrived on the scene, Irene was on her knees as Castillo stood over her moving a gun across her back. While taking cover behind his vehicle, Banks informed Castillo he was a police officer and ordered Castillo to drop his weapon. Rather than drop the gun, Castillo quickly walked about 15 to 20 feet from Irene, turned around and began shooting in her direction. Banks fired several rounds at Castillo. Castillo was hit and fell to the ground. Banks then moved to the front of the car. Castillo sat up and resumed shooting in Irene's direction. Banks fired at Castillo until he stopped moving. Banks continued to give him

commands until another officer came to the scene and placed Castillo in handcuffs.

¶5         Castillo was indicted for attempt to commit first-degree murder (Count 1) and aggravated assault (Count 2).  After a 10-day trial, a jury found Castillo guilty of aggravated assault and attempted second-degree murder, a lesser-included charge of Count 1.  Castillo appeals from his conviction and sentence for attempted second-degree murder.

## DISCUSSION

¶6         Castillo argues that the state presented insufficient evidence to sustain his conviction for attempted second-degree murder.  We review sufficiency of evidence claims de novo.  *State v. Pena*, 235 Ariz. 277, 279, ¶ 5 (2014).  Our supreme court has determined "there must be a complete lack of probative evidence supporting the verdict to mandate reversal."  *State v. Girdler*, 138 Ariz. 482, 488 (1983).  We view the facts in the light most favorable to upholding the verdict and resolve conflicting evidence against the appellant.  *Id.*

¶7         To sustain a conviction for attempted second-degree murder, the state had to prove that Castillo attempted to kill Irene without premeditation.  *See* A.R.S. § 13-1104(A)(1) (defining second-degree murder).

¶8         The attempt statute, in relevant part, reads:

> A. A person commits attempt if, acting with the kind of culpability otherwise required for commission of an offense, such person:
>
> . . . .
>
> 2. Intentionally does or omits to do anything which, under the circumstances as such person believes them to be, is any step in a course of conduct planned to culminate in commission of an offense[.]

A.R.S. § 13-1001(a)(2).

¶9         We will affirm a conviction for attempted murder if the evidence shows "some overt act or steps taken toward the commission of the crime and an intent to commit the crime."  *State v. Routhier*, 137 Ariz. 90, 99 (1983).  Castillo's only argument on appeal is that the state failed to prove beyond a reasonable doubt that he planned to kill Irene.  We disagree.

I.      THE STATE PRESENTED SUFFICIENT EVIDENCE THAT CASTILLO TOOK OVERT STEPS TOWARD COMMITTING MURDER.

¶10      The record includes probative evidence of Castillo's overt acts, including testimony that he approached the victim with a firearm, physically assaulted her, and shot several rounds in her direction.  Irene and Officer Banks testified that Castillo aimed a gun at Irene and pulled the trigger.  An eyewitness also testified that she saw a man and woman fighting before the man knocked the woman to the ground and began "shoot[ing] at her."  Officers also found a .380-caliber magazine and .380 casings that matched Castillo's gun in the parking lot.

II.     THE STATE PRESENTED SUFFICIENT EVIDENCE OF CASTILLO'S INTENT TO COMMIT MURDER.

¶11      The record includes probative evidence of Castillo's intent to commit murder, including two handwritten letters from Castillo to his sister and a friend before the incident.

¶12      To his friend, Castillo apologized for his future actions, blaming Irene and her lover for provoking him with "aggressions and mocking," and concluding, "I don't know what will happen, but unfortunately, I repeat, I am a man who respects the law but circumstances make me do the opposite."  To his sister, Castillo wrote, "I don't know whether I'll fuck up the motherfucker or the motherfucker and the bitch, but no matter what happens, I will rest."  Castillo does not deny writing the letters but claims portions of the letters were mistranslated or that his intent was misunderstood.  However, Castillo's oldest son, a native Spanish speaker, testified to the accuracy of the letters.  He also testified that Castillo had previously threatened to kill Irene's alleged lover.  Castillo's letters and previous statements are sufficient evidence from which a juror could reasonably find that he intended to commit murder.

**CONCLUSION**

¶13      For these reasons, we affirm.

