834 P.2d 160

**In the Matter of the APPEAL IN MARICOPA COUNTY JUVENILE ACTION NO. JV–123196.**

No. 1 CA–JV 91–051.

Court of Appeals of Arizona, Division 1, Department C.

May 28, 1992.

Richard M. Romley, Maricopa County Atty. by Gaye E. Cochran, Deputy County Atty., Phoenix, for appellee.

Dean W. Trebesch, Maricopa County Public Defender by John W. Melvin, Deputy Public Defender, Phoenix, for Juvenile.

KLEINSCHMIDT, Judge.

The appellant, a juvenile, was adjudicated delinquent for committing an aggravated assault in violation of Ariz.Rev.Stat. Ann. ("A.R.S.") § 13–1204(A)(8). He raises two issues on appeal: (1) whether the evidence was sufficient to prove that he was the assailant; and (2) whether the facts will support a finding that the assault was aggravated because it was committed upon one whose capacity to resist was substantially impaired. We hold that the identification evidence was sufficient but that the assault was not aggravated because, even if the victim was substantially impaired, whatever impairment occurred was the result of the assault and did not exist before the assault began.

FACTS

The victim, himself a juvenile, was riding his bicycle near his home when he heard another bicycle approaching him from the rear. As the victim turned to look, the approaching rider, who was on a blue bicycle, sprayed him in the face with an unknown substance contained in a canister. The victim closed his eyes in time to avoid most of the spray, but a small amount of the spray entered one eye, causing tears to form. He also felt a burning sensation on the skin around the eye.

The victim rode a little further and then stopped. The assailant ordered him to get off his bicycle, and when the victim refused, the assailant sprayed him again on the other side of the face, again causing tears to form and a burning sensation around the eye. The victim feared that the assailant was going to beat him up and take his bicycle. Although his vision was blurred which made it difficult to ride, the victim rode fast for home. He was followed for a short distance by the assailant, who broke off the chase when the victim tried to flag down a passing motorist for help.

The victim went home and flushed his face with water. Within a half hour of the assault, he and his mother began driving around the neighborhood looking for the assailant. The victim told his mother that the assailant was wearing a white T-shirt with black polka dots on it, that he had a yellow ribbon tied around his wrist, and that he was riding a blue bicycle.

The victim and his mother spotted the juvenile dressed as described and riding a blue bicycle. They stopped and asked what he had sprayed in the victim's face. The mother saw a white canister in the juvenile's pocket and asked him what it was. The juvenile denied having anything, and he rode away on his bicycle. The victim and his mother were unable to follow him. Later that same day, they again saw the juvenile on the blue bicycle when they were on the way to the grocery store.

Within a week of the incident, the victim again saw the juvenile at school and learned his name from friends. During the same week, the victim's mother also saw the juvenile standing in front of a house with some other boys.

The victim's mother supplied the police with the juvenile's name and the address of the house where he had been seen, and the police arrested the juvenile. Ten days after the assault, the victim identified the juvenile from a photo lineup.

The defendant was charged with an act of delinquency. The juvenile judge found that the juvenile was the assailant and that

the assault was aggravated because it had been committed upon a person whose capacity to resist had been substantially impaired.

## THE PROOF OF IDENTITY WAS SUFFICIENT

■ The juvenile argues that the evidence does not prove beyond a reasonable doubt that he was the assailant. Citing *Neil v. Biggers,* 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972), he lists the factors to be considered in evaluating the reliability of an identification:

(1) the opportunity of the witness to view the criminal at the time of the crime;

(2) the degree of the witness' attention;

(3) the accuracy of the witness' prior description of the criminal;

(4) the level of certainty demonstrated by the witness at the confrontation; and

(5) the length of time between the crime and the confrontation.

An analysis of these factors leads to the conclusion that the identification of the juvenile as the perpetrator in this case was entirely adequate. The juvenile makes much of the argument that the victim was very upset by the attack and that if the victim's vision was blurred to the point that his ability to resist was substantially impaired, he could not have seen the juvenile well enough to identify him later. These arguments are not particularly convincing. The victim got a good look at the juvenile between the first and second time he was sprayed in the face. He described how his assailant was dressed, and he described the bicycle he was riding. When, shortly after the assault, the victim and his mother saw someone matching that description, they both had an opportunity to observe the juvenile for several minutes. They both saw the juvenile several times in the following week, the victim picked him out of a photo lineup, and both the victim and his mother made a positive identification at trial. The identification evidence, far from being infirm, was solid.

## THE FACTS DO NOT CONSTITUTE AN AGGRAVATED ASSAULT

Assault, in Arizona, may be committed in three different ways. The statute, A.R.S. § 13–1203 provides:

A. A person commits assault by:

1. Intentionally, knowingly or recklessly causing any physical injury to another person; or

2. Intentionally placing another person in reasonable apprehension of imminent physical injury; or

3. Knowingly touching another person with the intent to injure, insult or provoke such person.

The juvenile was charged under A.R.S. § 13–1204(A)(8) with aggravated assault. That statute reads:

A. A person commits aggravated assault if such person commits assault as defined in § 13–1203 under any of the following circumstances:

. . . .

8. If such person commits the assault while the victim is bound or otherwise physically restrained or while the victim's capacity to resist is substantially impaired.

The juvenile has a dual argument with respect to the application of the aggravated assault statute. He says that the impairment that occurred here was slight, not substantial. He also says that the legislature did not intend "to make an assault aggravated, if in the course of a fight, one party simply gains the upper hand."

The Arizona statute appears to be unique, so it is not surprising that neither we nor the parties have found many decisions discussing the precise question that this case presents. We begin with an analysis of *State v. Barnett,* 101 Ariz.Adv.Rep. 100 (App. Nov. 29, 1991), a case recently decided by Division Two of this court. In *Barnett,* the victim was sitting outside his office waiting for someone to come and install his telephone. He was approached by the defendant and another man who asked him for the time. When the victim answered, the two men began to walk away. Almost immediately, the defendant

turned and hit the victim in the eye with his fist. The victim dropped to his hands and knees in order to get away, and he felt one of the men, later identified as the defendant, on top of him. The victim began to feel a series of electrical shocks on his chest and on his back from what later proved to be a stun gun. The victim tried to stand up and the defendant called to his confederate for help. The confederate began striking the victim from behind. The victim grabbed the defendant and threw him against a car and at this point, both assailants fled.

Two of the three judges who considered *Barnett* held that this conduct constituted an aggravated assault pursuant to A.R.S. § 13–1204(A)(8). They were of the opinion that the victim's testimony supported a finding that the victim was physically restrained when the assault occurred. The specific testimony they relied on was as follows:

I was hit and I dropped down on my hands and knees. And one of them was on top of me. I was being—I don't know. I thought this gun was underneath my heart and it kept—kept hitting up underneath my heart. And I kept feeling like an electrical shock.

. . . .

And I struggled, tried to get up.

The dissenter in *Barnett*, Judge Fernandez, reviewed the testimony and considered the evidence regarding stun guns. He noted that a "take down situation" requires that the person against whom the stun gun is used be held while that device is applied to the proper muscle tissues for two to eight seconds. When this is done, the person will be disoriented for up to fifteen minutes. Simply thrusting the device against a person would not be disorienting. Judge Fernandez concluded that the victim in *Barnett* was not substantially impaired. He went on to conclude that the victim had not been "otherwise restrained," saying:

I believe the use of the word "or" in the statute reflects the legislative intent that the physical restraint required be roughly equivalent to the restraint that exists when a victim is bound.

. . . .

I believe that the statute requires something more substantial than the momentary restraint that occurred in this case before a class 1 misdemeanor can be elevated to a class 6 felony.

We agree with Judge Fernandez. We see neither a restraint, nor a substantial impairment of the victim in *Barnett*.

That case, however, does not, in discrete terms, address one of the arguments which the appellant in the case before us raises—that the legislature did not intend to raise a simple assault to an aggravated assault whenever one combatant gained the upper hand. We will address that argument, but we turn first to the question whether the evidence will support the conclusion that the victim was substantially impaired.

### A. *The Victim Was Substantially Impaired*

The juvenile argues that the victim's capacity to resist was not impaired because he successfully fled from his assailant. The state contends that fleeing from an attack is not an act of resistance.

 We give the words of a statute their usual and commonly understood meaning. *State v. Korzep*, 165 Ariz. 490, 493, 799 P.2d 831, 834 (1990). The dictionary defines "substantial," among other things, as "considerable." Websters New World Dictionary, Second College Edition, at 1420 (1982). "Impair" means "to make worse, less, weaker, etc.; damage; reduce." Websters at 703. Thus to be substantially impaired is to be considerably weakened. "Capacity" is the "ability ... to do something," Websters at 209, and "resist," among other things, means to "refuse to submit to." Websters at 1210. We believe that the ability to flee from a situation is included in the concept of capacity to resist.

 Notwithstanding that conclusion, and notwithstanding that the victim was able to escape, we do not believe that the juvenile commissioner abused her discretion in finding that the victim's capacity to resist was substantially impaired in this

case. We will not reweigh the evidence to decide if we would reach the same decision as did the trier of fact. *See State v. Williams,* 132 Ariz. 153, 157, 644 P.2d 889, 893 (1982). We consider the evidence in the light most favorable to sustaining the verdict, and all reasonable inferences are resolved against the juvenile. *See State v. Romanosky,* 162 Ariz. 217, 782 P.2d 693 (1989). The evidence clearly showed that after he was sprayed the second time, the victim's vision was blurred to the point where it was difficult for him to ride his bicycle. The fact that he did escape may bear on the degree of impairment, but it is not determinative.

### B. *The Statute Does Not Apply Because the Impairment Did Not Exist Before the Assault Began, and It resulted from the Assault*

■ We doubt that the legislature intended that every assault, whether mutual combat or otherwise, that does not cease the instant one party achieves the upper hand constitutes an aggravated assault. We will not give the statute that effect. An ambiguity in a penal statute should be resolved in favor of the defendant. *See State v. Pena,* 140 Ariz. 545, 549–550, 683 P.2d 744, 748–49 (App.1983), *approved and adopted, State v. Pena,* 140 Ariz. 544, 683 P.2d 743 (1984).

■ The reference in the statute to an assault occurring while the victim is bound or physically restrained refers to conditions that would normally preexist an assault, and not to a condition or conditions which occur as a result of the assault. The present statute replaced A.R.S. § 13–245 (1959) (repealed) which provided that an assault was aggravated "when committed by a person of robust health or strength upon one who is decrepit." Decrepitude, like binding or restraining, is a condition that normally exists before an assault begins. *See State v. Mendibles,* 25 Ariz.App. 392, 543 P.2d 1149 (1976) (to be decrepit is to be disabled, incapable, or incompetent from physical or mental weakness or defect).

Of course, binding or otherwise restraining a person against that person's will would be an assault in and of itself, either because such might place the victim in reasonable apprehension of imminent physical injury or might be a touching with an intent to injure. When bonds or restraints or their functional equivalents, like a spray in the face that seriously interferes with the ability of the victim to resist, are used, the statute necessarily contemplates that other assaultive conduct must follow. If such conduct does follow, the assault is an aggravated one. If there is no follow-up, the assault, in the absence of other factors that might raise it to such, would not be aggravated.

This is not to say that substantial impairment must always preexist the beginning of an assault before the provisions of A.R.S. § 13–1204(A)(8) apply. For example, if during the course of an ongoing assault the assailant bound the victim, or for that matter sprayed the victim in the eyes with a blinding substance, so that the victim could not resist, and the assailant then committed an additional assault, the assailant would be guilty of a violation of the statute.

Here, however, the essence of the assault was the use of the spray. The victim testified that only a little of the first spray got in his eye, and although it blurred his vision, he could still see well out of his other eye. The first spray cannot be said to have substantially impaired the victim, and even if the second spray did substantially impair him, the assault was essentially over at that point. We have considered whether the juvenile's having chased the victim for a short distance after spraying him for the second time might be the kind of follow-up assault that will bring the aggravated assault statute into play. We conclude that it is too closely tied to the original assault, and too fleeting, to serve that purpose.

The adjudication of delinquency is affirmed but modified to reflect that it is based upon the commission of assault, a class 1 misdemeanor, instead of upon ag-

gravated assault, a class 6 felony. The disposition of the juvenile court is affirmed.

EUBANK, Acting P.J., and HAIRE, J. (retired),* concur.

* NOTE: The Honorable Levi Ray Haire, Retired, was authorized to participate in this appeal by the Chief Justice of the Arizona Supreme Court pursuant to Article 6, Section 20 of the Arizona Constitution and Ariz.Rev.Stat.Ann. § 38–813.