VÁSQUEZ, Presiding Judge:
¶1 After a jury trial, Alejandro Duarte was convicted of burglary, aggravated assault, and three counts of disorderly conduct. The trial court imposed concurrent prison terms, the longest of which was 3.25 years. On appeal, Duarte challenges the sufficiency of the evidence to support his burglary and aggravated assault convictions, arguing that under A.R.S. § 13-1204(A)(4) a "sleeping victim's capacity to resist is not substantially impaired." He also contends the court erred in precluding a victim's prior conviction for impeachment purposes. For the following reasons, we affirm.
Factual and Procedural Background
¶2 We view the facts in the light most favorable to affirming Duarte's convictions. See State v. Brown , 233 Ariz. 153, ¶ 2, 310 P.3d 29 (App. 2013). Duarte and J.C. had been in an on-again, off-again relationship for several years and had three children, M.D., A.D.J., and A.D. One afternoon in May 2016, Duarte called J.C. several times, threatening to go to J.C.'s house to "[b]reak [her] stuff" and "hurt [her]." J.C. told him not to come over.
¶3 That evening, J.C., her friend V.M., A.D.J., and A.D. went to the mall and got dinner. After returning home, J.C. and A.D.J. went to sleep in J.C.'s bed, A.D. slept in her room, and V.M. fell asleep on the couch in the living room. Later that night, Duarte entered J.C.'s house through the unlocked back door. He went into J.C.'s room and began hitting her. Duarte demanded to "look through [her] phone," grabbed it, and refused J.C.'s requests to return it. He then went outside and threw it on the sidewalk, shattering it.
¶4 A grand jury indicted Duarte for one count of second-degree burglary, aggravated assault on an incapacitated victim (J.C.), and three counts of disorderly conduct (V.M., A.D.J., and A.D.). He was convicted as charged and sentenced as described above. We have jurisdiction over Duarte's appeal pursuant to A.R.S. §§ 12-120.21(A)(1), 13-4031, and 13-4033(A)(1).
Sufficiency of the Evidence
¶5 Duarte argues his burglary and aggravated assault convictions "must be reversed because there was insufficient evidence that [J.C.] was incapacitated within the meaning of the statute defining aggravated assault." We review de novo the sufficiency of the evidence and issues of statutory interpretation. State v. Bon , 236 Ariz. 249, ¶ 5, 338 P.3d 989 (App. 2014) ; State v. Latham , 223 Ariz. 70, ¶ 9, 219 P.3d 280 (App. 2009).
¶6 Pursuant to § 13-1204(A)(4), "[a] person commits aggravated assault if the person commits assault as prescribed by [A.R.S.] § 13-1203... while the victim is bound or otherwise physically restrained or while the victim's capacity to resist is substantially impaired."[1] Here, the state agreed J.C. was not *711 bound or physically restrained; thus, the only issue was whether her capacity to resist was substantially impaired. Pursuant to A.R.S. § 13-1507(A), "[a] person commits burglary in the second degree by entering or remaining unlawfully in or on a residential structure with the intent to commit any theft or any felony therein." Here, the state argued the felony Duarte intended to commit was aggravated assault under § 13-1204(A)(4).[2]
¶7 As he did below, Duarte challenges the meaning of § 13-1204(A)(4), arguing that "[s]leep does not constitute substantial impairment of a victim's capacity to resist because it is a temporary and fleeting state." He reasons that "a sleeping victim's capacity to resist is not substantially impaired" because such a victim "has the ability to immediately awake[n] and defend [him or herself] as soon as the attack begins." This issue requires us to interpret the language of § 13-1204(A)(4).
¶8 When interpreting statutes, our duty "is 'to give effect to the legislature's intent.' " State v. Miller , 226 Ariz. 190, ¶ 12, 245 P.3d 454 (App. 2011) (quoting State v. Hinden , 224 Ariz. 508, ¶ 9, 233 P.3d 621 (App. 2010) ). In doing so, we first consider the language of the statute, State v. Derello , 199 Ariz. 435, ¶ 21, 18 P.3d 1234 (App. 2001), giving "every word and phrase its 'usual and commonly understood meaning unless the legislature clearly intended a different meaning,' " State v. Randles , 235 Ariz. 547, ¶ 8, 334 P.3d 730 (App. 2014) (quoting Bilke v. State , 206 Ariz. 462, ¶ 11, 80 P.3d 269 (2003) ); see also State v. Pena , 235 Ariz. 277, ¶ 6, 331 P.3d 412 (2014) (we may look to dictionaries for common meanings). "When the statute's language is plain and unambiguous, we must follow the text as written." Derello , 199 Ariz. 435, ¶ 21, 18 P.3d 1234.
¶9 The language at issue here is "while the victim's capacity to resist is substantially impaired." § 13-1204(A)(4). This court has previously interpreted that language, applying the common meanings of the words. See In re Maricopa Cty. Juv. Action No. JV123196 , 172 Ariz. 74, 77-78, 834 P.2d 160, 163-64 (App. 1992). Using a dictionary to guide our analysis, we concluded the language also means while the victim's ability to refuse to submit is considerably weakened. See id. at 77, 834 P.2d at 163 (citing Webster's New World Dictionary 209, 703, 1210, 1420 (2d coll. ed. 1982) ).
¶10 In Maricopa County Juvenile Action No. JV123196 , we concluded that § 13-1204(A)(4) did not apply when a juvenile twice sprayed the victim in the face with an unknown substance, "causing tears to form and a burning sensation around the [victim's] eye."[3] 172 Ariz. at 75, 78-79, 834 P.2d at 161, 164-65. The victim was able to flee on his bicycle after the second spray. Id. at 75, 834 P.2d at 161. Notwithstanding that the victim was able to escape, we determined the trial court did not abuse its discretion "in finding that the victim's capacity to resist was substantially impaired" because "after he was sprayed the second time, the victim's vision was blurred to the point where it was difficult for him to ride his bicycle." Id. at 78, 834 P.2d at 164. We explained, "The fact that he did escape may bear on the degree of impairment, but it is not determinative." Id. However, we concluded that "even if the second spray did substantially impair him, the assault was essentially over at that point" because the short distance the juvenile chased the victim after the second spray was "too closely tied to the original assault, and too fleeting." Id. Accordingly, we modified the juvenile's adjudication of delinquency to simple assault rather than aggravated assault. Id. at 78-79, 834 P.2d at 164-65.
¶11 State v. Barnett , 173 Ariz. 282, 842 P.2d 1295 (App. 1991), is the only other published decision addressing the meaning of § 13-1204(A)(4). In that case, the victim testified he had been hit in his eye, dropped to *712 his knees, and felt someone on top of him followed by "a series of electrical shocks on his chest underneath his heart." Barnett , 173 Ariz. at 283, 842 P.2d at 1296. A majority of this court affirmed the defendant's aggravated assault conviction based upon an assault occurring "while the victim [was] physically restrained." Id. at 285, 842 P.2d at 1298. However, the dissenting judge believed the defendant's conviction should have been reduced to simple assault because "the statute requires something more substantial than the momentary restraint that occurred in this case." Id. at 287, 842 P.2d at 1300. As relevant here, the dissenting judge also addressed "whether the victim's capacity to resist was substantially impaired." Id. at 286, 842 P.2d at 1299. "[T]he victim's capacity to resist was impaired" but not "substantially impaired" because "[t]here was no testimony that the victim was ever rendered groggy and disoriented" and the victim testified that he had "continue[d] to fight." Id.
¶12 Here, J.C. purportedly was incapacitated not by a chemical spray to the face or a stun gun, but by sleeping. Sleep is defined as "[a] natural periodic state of rest for the mind and body, in which the eyes are usually close[d] and consciousness is completely or partially lost, so that there is a decrease in bodily movement and responsiveness to external stimuli." The American Heritage Dictionary 1646 (5th ed. 2011). Based on this common definition, we conclude that sleeping plainly renders a "victim's capacity to resist ... substantially impaired." § 13-1204(A)(4). Put another way, being unconscious considerably reduces an individual's ability to refuse to submit.[4] See Maricopa Cty. Juv. Action No. JV123196 , 172 Ariz. at 77, 834 P.2d at 163.
¶13 We recognize that sleeping may be "temporary and fleeting," as Duarte points out. See The American Heritage Dictionary 1646 (5th ed. 2011). However, the plain language of § 13-1204(A)(4) does not require an ongoing substantial impairment of the victim's capacity to resist during an entire prolonged assault. And we will not read such a requirement into the statute. See State v. Womack , 174 Ariz. 108, 111, 847 P.2d 609, 612 (App. 1992) ("[C]ourts will not read into a statute something that is not within the manifest intent of the Legislature as gathered from the statute itself." (alteration in Womack ) (quoting Collins v. Stockwell , 137 Ariz. 416, 420, 671 P.2d 394, 398 (1983) ) ). Notably, a defendant could cause considerable harm in a short amount of time while the victim is sleeping, before he or she wakes up. Accordingly, the relevant language of § 13-1204(A)(4) is clear and unambiguous, and sleep renders a "victim's capacity to resist ... substantially impaired." See Bon , 236 Ariz. 249, ¶ 5, 338 P.3d 989 ; Latham , 223 Ariz. 70, ¶ 9, 219 P.3d 280.
¶14 Duarte nevertheless contends § 13-1204(A)(4) has three subparts and the third "general capacity to resist" subpart can be characterized as a " 'catch-all' provision." He reasons that the third subpart "must be construed in the same light as the other two subparts" and, thus, "the incapacitation must rise to the same level, meaning that whatever circumstance exists, in order to be substantial, it must leave the victim in a position to where the victim has virtually no ability to fight back." However, because the language of § 13-1204(A)(4) is plain and unambiguous, we need not resort to considering the statutory scheme as a whole. See Derello , 199 Ariz. 435, ¶ 21, 18 P.3d 1234 ; see also State ex rel. Montgomery v. Harris , 237 Ariz. 98, ¶ 13, 346 P.3d 984 (2014) ; State v. Ross , 214 Ariz. 280, ¶ 22, 151 P.3d 1261 (App. 2007). In any event, we fail to see how a victim has any ability to fight back while sleeping-he or she is unconscious and, thus, defenseless. Cf. Barnett , 173 Ariz. at 286, 842 P.2d at 1299 (victim perceived assault and continued to fight after being attacked).
¶15 Turning to the facts of this case, we must determine whether the state presented sufficient evidence that Duarte committed an assault on J.C. while her capacity to resist was substantially impaired. See §§ 13-1203(A), 13-1204(A)(4). In doing so, we view the evidence in the light most favorable to sustaining the jury's verdict and resolve all inferences against Duarte. See State v. Felix , 237 Ariz. 280, ¶ 30, 349 P.3d 1117 (App. 2015).
*713 ¶16 We will uphold a conviction if it is supported by substantial evidence. State v. Saez , 173 Ariz. 624, 627, 845 P.2d 1119, 1122 (App. 1992). "Substantial evidence is such proof that 'reasonable persons could accept as adequate and sufficient to support a conclusion of defendant's guilt beyond a reasonable doubt.' " State v. Sharma , 216 Ariz. 292, ¶ 7, 165 P.3d 693 (App. 2007) (quoting State v. Mathers , 165 Ariz. 64, 67, 796 P.2d 866, 869 (1990) ). "If reasonable [persons] may fairly differ as to whether certain evidence establishes a fact in issue, then such evidence must be considered as substantial." State v. Davolt , 207 Ariz. 191, ¶ 87, 84 P.3d 456 (2004) (alteration in Rodriguez ) (quoting State v. Rodriguez , 186 Ariz. 240, 245, 921 P.2d 643, 648 (1996) ). Substantial evidence may be direct or circumstantial. State v. Pena , 209 Ariz. 503, ¶ 7, 104 P.3d 873 (App. 2005).
¶17 Here, J.C. testified that she had been sleeping when Duarte began "hitting [her]" and she woke up. She also stated that because she had been sleeping she did not hear him coming and she "[c]ould [not] fight back." To the extent others testified inconsistently about when J.C. woke up-before or after Duarte first hit her-that was a factual issue for the jury to resolve. See State v. Manzanedo , 210 Ariz. 292, ¶ 3, 110 P.3d 1026 (App. 2005) (jury resolves conflicts in evidence). The state therefore presented substantial evidence from which reasonable jurors could have found Duarte guilty of aggravated assault beyond a reasonable doubt. See Sharma , 216 Ariz. 292, ¶ 7, 165 P.3d 693.
¶18 Duarte additionally challenges the sufficiency of the evidence to support his burglary conviction because "[t]he only theory of burglary presented to the jury was entering into the home to commit an assault upon an incapacitated victim." He therefore reasons, "Because there was insufficient evidence of intent to commit an assault upon an incapacitated victim because sleep does not meet the statutory definition for incapacitation, there was likewise insufficient evidence to support the conviction for burglary." But we have already rejected Duarte's argument that sleeping does not satisfy § 13-1204(A)(4).
¶19 Assuming without deciding that a conviction under § 13-1204(A)(4) requires the assault to be committed with knowledge that the victim is incapacitated, we further disagree with Duarte that the state did not present sufficient evidence that he "was aware [J.C.] was asleep and intended to assault her while she was asleep." See § 13-1507(A). Duarte had threatened to hurt J.C. earlier in the day. At approximately 10 p.m., Duarte entered the unlocked back door to J.C.'s house without knocking or otherwise announcing himself, walked past V.M. who had been sleeping on the couch, and found J.C. lying in her bed. He then hit J.C. multiple times. This evidence establishes that Duarte intended to assault J.C. while she was sleeping. See State v. Bearup , 221 Ariz. 163, ¶ 16, 211 P.3d 684 (2009) (defendant's conduct and comments circumstantial evidence of intent); see also State v. Wilson , 120 Ariz. 72, 74, 584 P.2d 53, 55 (App. 1978) ("Obviously there are times when intent may be inferred from conduct where it is plainly indicated as a matter of logical probability."). The state presented substantial evidence from which reasonable jurors could have found Duarte guilty of burglary beyond a reasonable doubt. See Sharma , 216 Ariz. 292, ¶ 7, 165 P.3d 693.
Impeachment Evidence
¶20 Duarte argues the trial court erred in precluding evidence of J.C.'s thirteen-year-old criminal conviction for attempted hindering prosecution. He contends the prior conviction was admissible for impeachment purposes under Rules 608 and 609, Ariz. R. Evid.[5] We review the preclusion of *714 evidence for a clear abuse of discretion. State v. Davis , 205 Ariz. 174, ¶ 23, 68 P.3d 127 (App. 2002).
¶21 In 2004, J.C. pled guilty to attempted first-degree hindering prosecution. Four days before trial in this case, Duarte filed a notice of his intent to use J.C.'s prior conviction for impeachment under Rule 609. He attached a copy of J.C.'s signed plea agreement and sentencing minute entry. The day before trial, Duarte also filed a motion in limine to cross-examine J.C. about "her prior involvement in hindering a prosecution," citing Rule 608(b) and arguing that her conviction was probative of her truthfulness.
¶22 The trial court heard argument on the issue just before J.C. testified at trial. The state asserted that J.C.'s "very old conviction" did not "bear on [her] propensity for testimonial untruthfulness" because the elements of hindering prosecution do not require an untruthful act. It therefore reasoned that the prior conviction was not appropriate impeachment evidence. In reply, Duarte stated that a defense investigator had obtained police reports from the incident and that J.C.'s prior conviction "was because of her false statements to law enforcement specifically." He therefore maintained the conviction was "very probative" because J.C.'s testimony "drives this entire case."
¶23 The trial court precluded evidence of J.C.'s prior conviction. With regard to Rule 609, the court noted, "[T]here are an untold number of ways that a person can attempt to hinder prosecution, which goes from lying to police all the way to not informing police, and not informing police is not lying to police." Thus, based on "[what was] presented to it through the plea agreement," the court concluded that J.C. was not necessarily convicted of "a crime of dishonesty." The court further explained the conviction was more than ten years old, Duarte did not give the state reasonable written notice that he intended to use the conviction, and "there [were] no specific facts or circumstances from which [it] could find that the probative value substantially outweigh[ed the] prejudicial effect." Similarly, with regard to Rule 608, the court reasoned that it did not "have anything in front of [it] from which [it] could actually conclude that this" prior conviction "goes to truthfulness or untruthfulness of the witness."
Rule 609
¶24 On appeal, Duarte contends J.C.'s prior conviction was admissible under Rule 609(a)(2) because it involved "an element of untruthfulness." Alternatively, he argues the conviction was admissible under Rule 609(a)(2) because "the factual basis clearly established that the offense involved lying to police officers while they were conducting an investigation."
¶25 When attacking a witness's character for truthfulness, evidence of a prior criminal conviction "must be admitted if the court can readily determine that establishing the elements of the crime required proving-or the witness's admitting-a dishonest act or false statement." Ariz. R. Evid. 609(a)(2). "[W]hether a prior conviction is admissible for impeachment purposes under Rule 609(a)(2) depends on the statutory language of the underlying offense and whether the conviction required proof of a dishonest act or false statement." State v. Winegardner , 243 Ariz. 482, ¶ 13, 413 P.3d 683 (2018). "[T]he phrase 'dishonest act or false statement' should be construed narrowly to include only those crimes that involve deceit, untruthfulness, or falsification." Id. ¶ 12.
¶26 Winegardner is instructive. There, the issue was whether a shoplifting conviction pursuant to A.R.S. § 13-1805(A) is automatically admissible as involving "a dishonest act or false statement." Winegardner , 243 Ariz. 482, ¶ 1, 413 P.3d 683 (quoting Ariz. R. Evid. 609(a)(2) ). Turning to the language of § 13-1805(A), our supreme court noted that "multiple subsections of the statute include elements of dishonesty and false statement"
*715 while "others do not." Id. ¶¶ 14 -15. Because the statute "indicates that a conviction may or may not involve elements of dishonesty or false statement," the court concluded that a shoplifting conviction is not per se admissible under Rule 609(a)(2). Id. ¶ 17. Yet, the court added that a shoplifting conviction might be admissible where "the record provided to the [trial] court" shows that the particular conviction involved "a dishonest act or false statement." Id. ¶ 18. Because Winegardner provided the trial court with "no information showing that [the victim's shoplifting conviction] involved a dishonest act or false statement," that court "did not abuse its discretion when it precluded evidence regarding the conviction." Id. ¶ 25.
¶27 Turning to J.C.'s conviction for first-degree hindering prosecution, a person commits that offense "if, with the intent to hinder the apprehension, prosecution, conviction or punishment of another for any felony, the person renders assistance to the other person." A.R.S. § 13-2512(A). And a person "renders assistance" to another by knowingly:
1. Harboring or concealing the other person; or
2. Warning the other person of impending discovery, apprehension, prosecution or conviction. This does not apply to a warning given in connection with an effort to bring another into compliance with the law; or
3. Providing the other person with money, transportation, a weapon, a disguise or other similar means of avoiding discovery, apprehension, prosecution or conviction; or
4. Preventing or obstructing by means of force, deception or intimidation anyone from performing an act that might aid in the discovery, apprehension, prosecution or conviction of the other person; or
5. Suppressing by an act of concealment, alteration or destruction any physical evidence that might aid in the discovery, apprehension, prosecution or conviction of the other person; or
6. Concealing the identity of the other person.
A.R.S. § 13-2510.
¶28 Like shoplifting, the offense of hindering prosecution can occur in multiple ways, not all of which necessarily involve "a dishonest act or false statement." Ariz. R. Evid. 609(a)(2). For example, as the state points out, warning another of impending discovery under § 13-2510(2) involves "a true statement, just one in contravention of law enforcement." And providing another with money under § 13-2510(3) does not involve "deceit, untruthfulness, or falsification." Winegardner , 243 Ariz. 482, ¶ 12, 413 P.3d 683. Therefore, J.C.'s conviction was not per se admissible under Rule 609(a)(2).
¶29 In addition, Duarte did not provide the trial court with any documentation showing that J.C.'s conviction in particular was one involving "a dishonest act or false statement." Ariz. R. Evid. 609(a)(2). Although Duarte referred to police reports, he only provided the court with copies of J.C.'s plea agreement and sentencing minute entry, which simply mentioned §§ 13-2510 and 13-2512 generally without identifying the relevant subsection upon which J.C.'s conviction was based. On appeal, Duarte suggests, "[T]he court had access to the file where it could have looked at the presentence report which corroborated counsel's statement" that J.C.'s conviction "involved lying to police officers."[6] But Duarte had the burden of proof on this issue. See Winegardner , 243 Ariz. 482, ¶ 20, 413 P.3d 683 ; see also Burden of Proof , Black's Law Dictionary (10th ed. 2014) ("A party's duty to prove a disputed assertion or charge...."). It was not incumbent on the court to research the issue for itself. Thus, the court did not abuse its discretion in precluding evidence of J.C.'s conviction under Rule 609(a)(2). See Davis , 205 Ariz. 174, ¶ 23, 68 P.3d 127.
¶30 Moreover, Rule 609(b) provides, "if more than 10 years have passed since the witness's conviction or release from confinement for it, whichever is later," evidence of a *716 prior conviction is admissible only if "its probative value, supported by specific facts and circumstances, substantially outweighs its prejudicial effect" and "the proponent gives an adverse party reasonable written notice of the intent to use it so that the party has a fair opportunity to contest its use." These additional requirements are "consistent with the notion that a criminal conviction's probative value regarding a witness' credibility declines as it becomes more remote in time." State v. Todd , 244 Ariz. 374, ¶ 6, 418 P.3d 1147 (App. 2018) (quoting Joseph M. Livermore et al., Arizona Practice: Law of Evidence § 609:2 (4th ed. 2008) ).
¶31 Here, J.C.'s prior conviction was more than ten years old. The trial court found the additional two requirements of Rule 609(b) also weighed against admission. Specifically, the court concluded that four days before trial was not reasonable notice of Duarte's intent to use J.C.'s prior conviction, and we cannot say that determination was erroneous.[7] Cf. Ariz. R. Crim. P. 16.1(b) ("Parties must make all motions no later than 20 days before trial...."). We likewise cannot say the court erred in finding that the probative value of J.C.'s prior conviction did not outweigh its prejudicial effect.[8] See Todd , 244 Ariz. 374, ¶ 6, 418 P.3d 1147 ; see also State v. Connor , 215 Ariz. 553, ¶ 39, 161 P.3d 596 (App. 2007) ("Because '[t]he trial court is in the best position to balance the probative value of challenged evidence against its potential for unfair prejudice,' the trial court has broad discretion in this decision." (alteration in Connor ) (quoting State v. Harrison , 195 Ariz. 28, ¶ 21, 985 P.2d 513 (App. 1998) )). This analysis further supports our conclusion that the court did not abuse its discretion in precluding J.C.'s conviction.
Rule 608
¶32 Duarte also asserts that J.C.'s prior conviction "was admissible under Rule 608 because it was a specific instance of misconduct involving untruthfulness to law enforcement officers conducting an investigation." He insists that "[l]ying to the police while they are conducting an investigation is unquestionably an act that speaks to a person's veracity as a witness."
¶33 On cross-examination, the trial court may allow "specific instances of a witness's conduct," including criminal convictions, "to be inquired into if they are probative of the character for truthfulness or untruthfulness." Ariz. R. Evid. 608(b) ; see State v. Woods , 141 Ariz. 446, 450, 687 P.2d 1201, 1205 (1984). However, the court must exercise its discretion "to determine whether the probative value of the conduct is substantially outweighed by the danger of unfair prejudice, confusion, or waste of time." State v. Murray , 184 Ariz. 9, 30, 906 P.2d 542, 563 (1995) ; see Ariz. R. Evid. 403.
¶34 As discussed above, the record before the trial court did not establish that J.C.'s prior conviction for first-degree hindering prosecution was an instance of untruthfulness. Cf. Woods , 141 Ariz. at 449-50, 687 P.2d at 1204-05 (no abuse of discretion by trial court in ruling that charge of theft by fraud was not probative of truthfulness). Duarte nevertheless argues that "any purported prejudice would not outweigh the probative value of [J.C.'s prior conviction], particularly because this was a criminal case and the evidence was related to the accuser and her credibility as a witness." But the potential prejudice of a prior conviction is greater where the conviction is so remote that it no longer reasonably reflects the witness's credibility. See Todd , 244 Ariz. 374, ¶ 6, 418 P.3d 1147 ; see also State v. Harvill , 89 Ariz. 340, 342, 362 P.2d 663, 665 (1961). Accordingly, we cannot say the trial court abused its discretion in precluding evidence of the conviction under Rule 608(b). See Davis , 205 Ariz. 174, ¶ 23, 68 P.3d 127.
*717 Disposition
¶35 For the foregoing reasons, we affirm Duarte's convictions and sentences.

Under § 13-1203(A), a person commits assault by "[i]ntentionally, knowingly or recklessly causing any physical injury to another person," "[i]ntentionally placing another person in reasonable apprehension of imminent physical injury," or "[k]nowingly touching another person with the intent to injure, insult or provoke such person."

The trial court granted Duarte's motion for a judgment of acquittal "as it relate[d] to theft as an underlying offense to commit the burglary."

Section 13-1204(A)(4) was previously numbered § 13-1204(A)(8). See 2007 Ariz. Sess. Laws, ch. 47, § 1; 2005 Ariz. Sess. Laws, ch. 166, § 3; 2005 Ariz. Sess. Laws, ch. 124, § 3. The subsection has not substantively changed since it was added in 1977. See 1977 Ariz. Sess. Laws, ch. 142, § 61.

At oral argument, Duarte suggested our conclusion would lead to absurd results because § 13-1204(A)(4) could then apply to a surprise attack where the victim failed to perceive the danger. We do not address this issue, however, because that is not the case before us.

Duarte also suggests the preclusion of J.C.'s prior conviction violated his Confrontation Clause rights. However, Duarte only generally referred to his "right to cross-examine [J.C.]" under the United States and Arizona constitutions in his motion in limine below. Thus, Duarte arguably failed to preserve this issue for appeal. See State v. Lopez , 217 Ariz. 433, ¶ 4, 175 P.3d 682 (App. 2008) (objection on one ground does not preserve issue on another); see also State v. Escalante , 245 Ariz. 135, ¶ 12, 425 P.3d 1078 (2018) (argument not raised below reviewed for fundamental, prejudicial error). Regardless of what standard we apply, however, no error occurred. The right of confrontation "is not without boundary, and trial judges 'retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on ... cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." State v. Carreon , 210 Ariz. 54, ¶ 36, 107 P.3d 900 (2005) (quoting State v. Cañez , 202 Ariz. 133, ¶ 62, 42 P.3d 564 (2002) ). As discussed below, the preclusion of J.C.'s prior conviction was reasonable based on its remoteness and unclear bearing on J.C.'s credibility.

Although the presentence report is part of our supplemental record on appeal, it was not before the trial court at the time of its ruling. Accordingly, we do not consider it. See State v. Herrera , 232 Ariz. 536, ¶ 24, 307 P.3d 103 (App. 2013) (appellate court's review limited to trial court's record).

Although counsel discussed by email J.C.'s prior conviction the month before Duarte's trial, the record contains no indication by defense counsel that she intended to impeach J.C. with the conviction until the notice was filed.

At trial, the state explained that if the trial court allowed evidence of J.C.'s prior conviction, that would "open the door" for the state to discuss the details of the conviction and how Duarte was involved.