NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

NEAL DONNIE FERRARA, *Appellant.*

No. 1 CA-CR 23-0318
FILED 03-28-2024

Appeal from the Superior Court in Mohave County
No. S8015CR202101252
The Honorable Billy K. Sipe Jr., Judge *Pro Tempore*

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Rebecca Jones
*Counsel for Appellee*

DM Cantor, Phoenix
By Brian L. Borrelli, Courtney R. Sullivan
*Counsel for Appellant*

**MEMORANDUM DECISION**

Presiding Judge Anni Hill Foster delivered the decision of the Court, in which Judge Brian Y. Furuya and Vice Chief Judge Randall M. Howe joined.

**F O S T E R**, Judge:

¶1          Neal Donnie Ferrara appeals his conviction and sentence for sexual conduct with a minor. He argues the superior court erred by allowing a detective to testify at trial that the victim lied during her investigatory interview. Ferrara also asserts the court improperly restricted his cross-examination of a witness. For the following reasons, Ferrara's conviction and sentence are affirmed.

**FACTS AND PROCEDURAL HISTORY**

¶2          In 2021, Ferrara worked at a boat upholstery shop in Lake Havasu City; he was 23 years old. On October 7, 2021, Jennifer, who conducted business with the shop, walked in while Ferrara and another employee, Heather, were working.[1] Heather was 14 years old and was the granddaughter of the owner's friend. As Jennifer entered the shop to look for keys to a vehicle she was borrowing from the shop's owner, she saw Ferrara and Heather having sexual intercourse. Jennifer immediately left and later informed the shop's owner of what she witnessed. When the owner subsequently confronted Ferrara, Ferrara explained he had sex with his ex-girlfriend at the shop—not Heather. He stated that Heather was waiting in his vehicle for a ride home.

¶3          To verify Ferrara's story, the shop owner viewed a neighboring business's surveillance video that depicted the front area outside the shop around the time that Jennifer stated she observed Ferrara and Heather together. But the video showed Jennifer walk into the shop and leave quickly. It did not corroborate Ferrara's story. Instead, the video demonstrated that aside from the time Jennifer was looking for the keys, Ferrara and Heather were alone in the shop.

---

[1]     To protect the witness's and victim's identities, pseudonyms are used.

¶4            The owner then informed Heather's grandfather, with whom she lived, of the incident. When confronted about the incident, Heather told her grandfather "nothing happened" with Ferrara. She explained that, instead, Ferrara had sex with his ex-girlfriend at the shop. Subsequently, Heather and her grandfather had a physical altercation over her use of a laptop computer. Heather called 911, and when officers arrived, the topic of the October 7th incident arose. Heather told the officers "nothing happened" with Ferrara.

¶5            A detective from the Lake Havasu City Police Department subsequently interviewed Heather, and she again denied having sex with Ferrara. Heather explained, however, that she lied to her grandfather about what happened. Heather admitted she and Ferrara were the last people in the shop that day, and she denied talking to Ferrara afterwards.

¶6            The detective also interviewed Ferrara, who similarly admitted to being alone in the shop with Heather at the end of the workday on October 7, 2021, and he denied talking to her since then. Ferrara admitted that he untruthfully told the owner of the shop that he had sex with his ex-girlfriend, explaining he did not have sex at all in the shop. When the detective inquired about the similarity in alibis both Heather and Ferrara initially told before admitting the stories were not true, Ferrara responded, "[That's] odd."

¶7            The State charged Ferrara with one count of sexual conduct with a minor, a class 2 felony and dangerous crime against children. At trial, Heather testified that she and Ferrara did indeed have sexual intercourse on October 7 while they were alone at the shop in the afternoon. Heather testified she told the detective she did not have sex with Ferrara because she was afraid what others "would think and say." Heather admitted that Ferrara instructed her to tell others he had sex with his ex-girlfriend.

¶8            During the detective's direct testimony, the prosecutor asked, "Do you have any training and experience in regards to interviewing and in relation to body language or how someone answers a question and that type of thing?" The detective responded, "Yes[,]" and the prosecutor then asked, "During your interview with [Heather], did it appear to you that she was telling you the truth?" Without objection, the detective answered, "No."

¶9            The jury found Ferrara guilty as charged, and the superior court imposed a 15-year mitigated prison sentence. *See* A.R.S. § 13-705(E).

Ferrara timely appealed. This Court has jurisdiction under A.R.S. § 12–120.21(A)(1) and A.R.S. §§ 13–4031, –4033(A)(1).

## DISCUSSION

### I.  The Detective's Testimony Did Not Result in Fundamental Error.

**¶10**         Ferrara argues the superior court fundamentally erred by allowing the detective to testify that he believed Heather was untruthful during her interview. *See State v. Escalante*, 245 Ariz. 135, 140, ¶ 12 (2018). But Ferrara did not object to this testimony during trial. When a defendant fails to object in the trial court, this Court reviews only for fundamental error. To prevail under fundamental error review, Ferrara must first establish error. *Id.* at 142, ¶ 21.

**¶11**         To support his claim of error, Ferrara relies on *State v. Reimer*, 189 Ariz. 239 (App. 1997). There, the victim testified at trial that the defendant "showed her the shotgun," but denied that he threatened to kill her or that he hit her with the weapon. *Reimer*, 189 Ariz. at 240. The officer who responded to the victim's 911 call, however, testified the victim told him upon his arrival at the scene that the defendant pointed the shotgun at her, threatened to kill her, and hit her with the butt of the weapon. *Id.* After describing his experience in evaluating a person's credibility, the officer testified—over defendant's objection—that he believed the victim's pre-trial statement was "the truth." *Id.* This Court determined the trial court abused its discretion under Arizona Rules of Evidence 701 and 702 by permitting the officer to testify he was experienced in evaluating someone's credibility, and in his opinion, the victim was truthful. *Id.* at 240–41; *see also* Ariz. R. Evid. 701, 702 (respectively limiting the permissible testimony of lay and expert witnesses). "Such opinions are rejected[,]" this Court reasoned, "because they are 'nothing more than advice to jurors on how to decide the case.'" *Reimer*, 189 Ariz. at 241 (quoting *State v. Moran*, 151 Ariz. 378, 383 (1986)); *see also State v. Lindsey*, 149 Ariz. 472, 475 (1986) ("[E]xperts should not be allowed to give their opinion of the accuracy, reliability or credibility of a particular witness in the case being tried [because] . . . [t]he law does not permit expert testimony on how the jury should decide the case. . . . We believe that such testimony is inadmissible.").

**¶12**         Here, Heather denied Ferrara's guilt during her pre-trial interview, yet implicated him at trial. Thus, the detective's opinion that she untruthfully denied the allegation against Ferrara in the interview logically meant he found her trial testimony implicating Ferrara credible. The detective's opinion testimony was therefore inadmissible.

**¶13**      Having shown admission of the detective's opinion was error, Ferrara must also establish that the error was so egregious as to deny him a fair trial or that it otherwise prejudiced him and either went to the foundation of the case or denied him a right essential to his defense. *Escalante*, 245 Ariz. at 142, ¶ 21. To satisfy that burden, Ferrara argues that, absent the detective's improper opinion testimony, the jury "likely would have acquitted" because the "weight . . . [of] the Detective's 'expertise'" ensured that the jury would not doubt Heather's trial testimony.

**¶14**      Ferrara's argument improperly requires this Court to speculate about the weight the jury afforded not only the detective's opinion regarding the credibility of Heather's trial testimony, but also other inculpatory evidence. This Court does not weigh evidence; that is the jury's function. *State v. Williams*, 209 Ariz. 228, 231, ¶ 6 (App. 2004). It is sufficient to note that, absent the detective's improper opinion testimony, the jury had before it other evidence by which to evaluate Heather's credibility and ultimately determine Ferrara's guilt. Most importantly, Heather admitted at trial that she lied during her interview with the detective. The jurors were properly instructed that they were to "decide the credibility and weight to be given to any evidence presented in the case" and in making such determinations should use factors such as whether the witness "contradicted [ ] anything the witness said or wrote before trial," including Heather's admission. This Court presumes the jury follows its instructions. *State v. Newell,* 212 Ariz. 389, 403, ¶ 68 (2006). Additionally, a video and audio recording of Heather's interview was admitted into evidence; thus, the jurors could independently determine her credibility when she denied having sex with Ferrara versus her testimony at trial.

**¶15**      Moreover, Heather's trial testimony was not the only evidence indicating Ferrara's guilt. *See State v. Ramos*, 235 Ariz. 230, 237, ¶ 20 (App. 2014) ("Given the strength of the State's evidence . . . we hold that even without the prosecutor's impermissible statements . . . no reasonable jury could have acquitted Ramos . . . ."). The shop owner testified about Jennifer's report of the sexual activity that took place at the shop, and Jennifer's trial testimony was consistent with the owner's. Significantly, Ferrara himself made incriminating statements. His initial false admission to having sex with his ex-girlfriend, followed by his denial of having sex in the shop at all, could reasonably be viewed by the jury as consciousness of guilt on Ferrara's part. *See State v. Cotton*, 197 Ariz. 584, 590, ¶ 22 (App. 2000) (a defendant's changing story to deceive police "reflects a consciousness of guilt"). As a result, Ferrara fails to affirmatively show that, absent the detective's improper opinion testimony, "a reasonable [fact finder] . . . could have reached a different [verdict]."

*Escalante*, 245 Ariz. at 144, ¶ 29 (quoting *State v. Henderson*, 210 Ariz. 561, 569, ¶ 27 (2005)); *see State v. Dickinson*, 233 Ariz. 527, 531, ¶ 13 (App. 2013) ("[A defendant] must affirmatively 'prove prejudice' and may not rely upon 'speculation' to carry his burden [of establishing reversible fundamental error].").

## II. Limiting Ferrara's Cross-Examination of Jennifer Was Within the Court's Discretion.

**¶16** Ferrara next challenges the superior court's decision restricting his cross-examination of Jennifer. According to Ferrara, he should have been permitted to probe Jennifer's character for truthfulness by questioning her about her employment termination. This Court reviews this issue for an abuse of discretion. *State v. Duarte*, 246 Ariz. 338, 344–45, ¶ 20 (App. 2018).

**¶17** In relevant part, Arizona Rule of Evidence 608(b) provides:

> [E]xtrinsic evidence is not admissible to prove specific instances of a witness's conduct in order to attack or support the witness's character for truthfulness. But the court *may*, on cross-examination, allow them to be inquired into if they are probative of the character for truthfulness or untruthfulness of . . . the witness[.]

Ariz. R. Evid. 608(b) (emphasis added). But Rule 608(b) has three requirements for admitting such testimony: (1) the conduct may not be proved by extrinsic evidence, (2) the conduct must be probative of the character of the witness for truthfulness, and (3) the trial court must exercise discretion to determine whether the probative value of the conduct is substantially outweighed by the danger of unfair prejudice, confusion, or waste of time. *State v. Murray*, 184 Ariz. 9, 30 (1995); *see also* Ariz. R. Evid. 403 ("The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.").

**¶18** Before Jennifer testified at trial, the prosecutor informed the court that Jennifer was fired allegedly for stealing from her employer. The prosecutor explained that she called the employer, who confirmed Jennifer was fired for alcoholism, lying, and theft. The prosecutor then explained she subsequently talked with Jennifer, who described the employer's cited reasons for firing her as "just accusations[.]" Jennifer claimed she quit that

job after the "owners had boxed up all her belongings and accused her of stealing about $700 from the business."

¶19        Noting that the accusations were "just really a boss'[s] suspicions" that were not "reported to law enforcement, [and Jennifer] doesn't have any convictions associated with that[,]" the State requested the court preclude Ferrara's impeachment of Jennifer with the employer's reasons for firing her. *See* Ariz. R. Evid. 608(b). Ferrara objected, arguing he should be allowed to cross-examine Jennifer "as to the character of her truthfulness." Ferrara clarified that he was not seeking "to bring in extrinsic evidence" in the form of the employer's testimony regarding the grounds for Jennifer's firing, but he argued he should be allowed to directly impeach Jennifer's credibility with her employer's reasons for firing her.[2]

¶20        The court precluded Ferrara from impeaching Jennifer with the specific instance of her employment termination, but noted Ferrara could impeach her reputation for truthfulness through another's testimony. *See* Ariz. R. Evid. 608(a) ("A witness's credibility may be attacked or supported by testimony about the witness's reputation for having a character for truthfulness or untruthfulness, or by testimony in the form of an opinion about that character."). The court also found that the reason for Jennifer's termination was "not relevant to any issue in this case."

¶21        Ferrara correctly observes that Rule 608(b) does not prohibit a witness from testifying about specific instances of her conduct that demonstrate her character for truthfulness. *See State v. Woods*, 141 Ariz. 446, 450 (1984) ("[U]nder Rule 608(b) the trial court has discretion to allow cross-examination of a witness about his specific acts of misconduct, if they are probative of truthfulness, even though the witness has not been convicted of any crime in connection with those acts."). But his argument fails to consider the duty given to the superior court in determining the probative value. *See* Ariz. R. Evid. 403.

---

[2]        Ferrara also cited Arizona Rule of Evidence 404(b) as a basis for questioning Jennifer about her employment termination. *See* Ariz. R. Evid. 404(b) (subject to exceptions, "evidence of other crimes, wrongs, or acts, is not admissible to prove the character of person in order to show action in conformity therewith"). On appeal, Ferrara does not argue the trial court erred under Rule 404(b). He has therefore waived that argument. *See State v. Carver*, 160 Ariz. 167, 175 (1989) (holding that the failure to argue a claim usually constitutes abandonment and waiver of such claim).

¶22　　　The superior court found that Jennifer's employment was not probative as to *any* issue in this case, which includes Jennifer's credibility both at the time she reported Ferrara's sexual intercourse with Heather and when she testified consistently with her report at trial. By finding the proposed testimony would be wholly irrelevant to evaluating Jennifer's credibility in this case, the trial court was not required to weigh the relevancy of the evidence against its potential "dangers." Irrelevant evidence simply is not admissible. Ariz. R. Evid. 402; *compare with* Ariz. R. Evid. 403 ("The court may exclude *relevant* evidence if its probative value is substantially outweighed by a danger of [prejudice].") (emphasis added). Despite Ferrara's assertion to the contrary, the trial court's determination that the reason for Jennifer's firing was irrelevant indicates the court sufficiently exercised its discretion under Rule 608(b). *Seef Woods,* 141 Ariz. at 450 (trial judge's ruling that witness's specific act was not probative of truthfulness "was properly within the discretion of the trial judge" in precluding the witness under Rule 608(b) from testifying about the act).

¶23　　　Moreover, given that Jennifer's employment was terminated more than one year after she reported the sexual incident at the shop, Ferrara does not explain how Jennifer's alleged improper conduct was relevant to her credibility in this case. Ferrara does not contend, for example, that he informed Jennifer's former boss of her stealing, and thus provided a motive for her to falsely report the sex Ferrara had with Heather. *See, e.g., Amburgey v. Holan Div. of Ohio Brass Co.*, 124 Ariz. 531, 533 (1980) ("Nor do we believe that the discharge of [the witness for falsifying a time record] establishes a motive for him to testify against appellant."). The court acted within its discretion by precluding Jennifer's own testimony on that collateral subject. *See State v. Prince*, 160 Ariz. 268, 273 (1989) (trial court acted within its discretion under Rule 608(b) by precluding witness from testifying about his purported untruthfulness during pre-trial interview).

**CONCLUSION**

¶24　　　Ferrara's conviction and sentence are affirmed.

